[L. A. No. 3594.   In Bank.—December 13, 1916.]

## THE PEOPLE, on the Relation of AMESTOY ESTATE COMPANY, Appellant, v. VAN NUYS LIGHTING DISTRICT OF LOS ANGELES COUNTY et al., Respondents.

Lighting Districts — Unincorporated Towns and Villages — Agricultural Lands cannot be Included.—The act of March 20, 1909 (Stats. 1909, p. 551), authorizing unincorporated towns and villages to establish and maintain systems of street lights on public highways and providing for the formation of highway lighting districts, authorizes the formation of such districts only within the limits of an unincorporated town or village, and excludes from the territory of such districts large areas of land devoted exclusively to agricultural purposes and not coming within any definition applicable to towns or villages.

Id.—"Town" and "Village" Defined.—The word "town" means, in general, any large collection of houses and buildings, public and private, constituting a distinct place with a name and not incorporated as a city. There is no substantial difference between an unincorporated town and a village except that perhaps the latter *is* usually understood to be smaller than a town.

Id.—Agricultural Land Attempted to be Included in District—Corporation Void Pro Tanto.—A lighting district organized under such act, which attempts to include within its territory large areas of land devoted exclusively to agricultural purposes, is a void corporation so far as such land is concerned, and its managing board is without authority to exercise any of the powers given by that act and the amendments of 1913 thereto, over or upon such land.

Id.—Effect of Curative Act—Jurisdictional Defects.—A curative act or a conclusive evidence clause in a statute is effective to cure all defects resulting from a failure to comply with provisions which are merely directory of the mode of the exercise of the power. But defects and omissions which go to the jurisdiction of the board to act at all, and which make their action absolutely void, cannot be cured in this manner.

Id.—Local Taxing District—Fixing Boundaries—Hearing on Question of Benefits.—When the power to form a local taxing district is delegated to a local board or tribunal, it acts judicially in fixing the boundaries, and the parties whose lands are proposed to be included are entitled to a hearing upon the question of benefits, before the formation of the district, and to have their lands excluded if it appears that they are not benefited.

ID. — VOID ATTEMPT TO FORM LIGHTING DISTRICT — PRIOR PROCEEDINGS NOT VALIDATED BY CURATIVE ACT OF 1915.—An attempt to form a lighting district under the act of 1909 is illegal and void, for the reason that the act gives to a designated number of taxpayers and residents of any unincorporated town or village the power to determine what land should be included in the district, without making any provision for inquiry as to benefits or change of the boundaries fixed by them in their petition, or for any hearing upon the subject; and the Curative Act of May 29, 1915 (Stats. 1915, p. 939), is ineffective to revive or validate the previous proceedings of a district so attempted to be formed.

ID.—VALIDATION OF ILLEGAL TAX—DUE PROCESS OF LAW.—The legislative attempt to validate a tax levied by a pretended corporation having no legal authority over the property taxed would, if given effect, be equivalent to the imposition of an obligation by statute without due process of law.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick W. Houser, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, Leonard B. Slosson, and Edgar Sharp, for Appellant.

J. D. Fredericks, District Attorney, O'Melveny, Stevens & Millikin, and Walter K. Tuller, for Respondents.

SHAW, J.—The court below sustained a general demurrer to the complaint and the plaintiff refused to amend, whereupon judgment was given for the defendants.

The action is in *quo warranto* to determine the validity of the incorporation and organization of the Van Nuys Lighting District of Los Angeles County.

Said lighting district claims to be a public corporation organized under and in pursuance of the act of March 20, 1909 (Stats. 1909, p. 551). The other defendants are members of the board of supervisors of Los Angeles County, which board is, by section 11 of said act, given the authority to exercise the powers of districts within the county organized under the act.

The object of the act, as stated in its title, is to allow unincorporated towns and villages to maintain systems of street lights on the public highways and to provide for the formation, management, and control of highway lighting districts.

The complaint alleges that the defendant district claims to be a lighting district formed in pursuance of the act, and that the supervisors of the county, claiming to be *ex-officio* supervisors of said pretended lighting district, are purchasing equipment for lighting certain highways therein and otherwise assuming to act under the authority of said law, and that, in that assumed capacity, they have levied a special tax upon the land within the district, including certain land owned by the relator, Amestoy Estate Company; that said defendant was never organized or established as provided by law, and is not a legally organized or existing lighting district. The proceedings had to organize the district are set forth at length. The territory within the boundaries of the district consists of about fifty thousand acres of land, being approximately thirteen miles in length and six miles in width. Within this territory are two unincorporated villages, one known as Van Nuys, occupying about 640 acres and having about 350 inhabitants; the other known as Owensmouth, covering 320 acres and having about one hundred inhabitants. These two villages are ten miles apart. The balance of the land of the district consists of farming lands, grazing lands, and unproductive mountain land. The entire population outside of said two villages does not exceed three hundred people, and consists of persons living in houses widely separated, often several miles from the nearest neighbor. The relator owns four thousand five hundred acres of land within the district upon which only twenty-five persons reside, and no part of it is within a mile of either of said villages.

It is contended by appellant that the act authorizes the formation of lighting districts only within the limits of an unincorporated town or village, and hence that the formation of a district including four thousand five hundred acres of land devoted to farming and not inhabited as a village at all is not within the authority given by the law. We think the point is well taken.

The title of the act is as follows:

"An act to allow unincorporated towns and villages to establish, equip and maintain systems of street lights on public highways; to provide for the formation, government and operation of highway lighting districts; the calling and holding of elections in such districts; the assessment, collection,

custody and disbursement of taxes therein; and the creation of *ex-officio* boards of supervisors."

Section 1 defines the meaning of certain words and phrases used in the act. Section 2 is as follows:

"Any unincorporated town or village of this state may establish a highway lighting district for the purpose of installing and maintaining a system of street lights on *public highways*, for the better protection of its residents, in accordance with the provisions of this act."

Section 3 provides that "upon the application, by petition, of twenty-five or more taxpayers and residents of said town or village, to the board of supervisors of the county in which the said town or village is situated, praying for the formation of a public highway lighting district," the supervisors must proceed in the manner prescribed to call an election and thereupon the district may be formed. These provisions clearly show that scope of the act, so far as the question of territory is concerned, is limited to unincorporated towns or villages, and that it does not include large areas of territory devoted exclusively to agricultural purposes and not coming within any definition applicable to towns or villages. The words "town" and "village" are of common use and have a well-defined meaning. The word "town" is defined by Webster as "In general, any large collection of houses and buildings, public and private, constituting a distinct place with a name and not incorporated as a city." He defines a village as "Any small aggregation of houses in the country, being in general, less in number than in a town or city and more than in a hamlet." The word "town" is also defined as meaning, in popular use, "a large closely populated place, as distinguished from the country, or from rural communities." (*City of Denver* v. *Coulehan*, 20 Colo. 471, [27 L. R. A. 751, 39 Pac. 425].) Also as "An aggregation of inhabitants and a collection of occupied dwellings and other buildings." (*Siskiyou Lumber etc. Co.* v. *Rostel*, 121 Cal. 511, 513, [53 Pac. 1118].) Also as "A place where there are a number of adjacent occupied dwellings." (*Klauber* v. *Higgins*, 117 Cal. 451, 460, [49 Pac. 466].) There is no substantial difference between an unincorporated town and a village except that perhaps the latter is usually understood to be smaller than a town. With respect to the boundaries of such places, it is true that they are usually not well defined. The line where the village

or town ceases and the country begins cannot usually be located with precision, although it is seldom difficult to locate it approximately.

It is suggested that the statement in the title of the act that it is "to provide for the formation, government and operation of highway lighting districts" indicates that it was designed to authorize the formation of said districts anywhere within the county, whether within a town or village or elsewhere. But the title does not constitute the act. The only provision of the act authorizing the formation of said districts, so far as territory is concerned, is found in section 2 above quoted. This provides simply that "any unincorporated town or village of this state" may establish such district. It is true that it proceeds to say that the district may be established by such town or village for the purpose of maintaining lights on "public highways." But this is immediately followed by the statement that this is to be done for the better protection "of its residents," thus again, by necessary implication, limiting the operation of the act to the confines of the town or village. This is further shown by the language of section 3, providing that the persons who petition for such district must be taxpayers and residents of said town or village. It cannot be seriously contended that language of that character can be expanded by construction so as to authorize the board of supervisors, on petition of the inhabitants of a town or village embracing 640 acres of land, to order the incorporation of a lighting district embracing over seventy square miles of territory and fifty thousand acres, sparsely settled and devoted to agricultural purposes, or vacant and unoccupied, situated in the adjacent country. The petitioners, in the present case, were all residents of the village of Van Nuys. We cannot conceive that the legislature intended to authorize such a proceeding. Manifestly, the chief purpose of such an organization would be to provide for lighting the streets of the more closely populated region comprising the town or village. It would be unfair and unjust to compel the owners of agricultural lands receiving no material protection or benefit from such lights exceeding that of the general public to pay the greater part of the expense thereof, as would necessarily be the case if a district such as that here contemplated should be formed and maintained. The only fair and reasonable construction of the act is that

districts for which it provides are intended to be limited, territorially, to the town or village whose residents and taxpayers petition therefor. Doubtless the board of supervisors would have much discretion upon the question whether or not any particular parcel of land could reasonably be included as part of such town or village. The courts should be loath to set aside the proceeding for error in this particular, and would not do so unless the unwarranted inclusion is clear. Here there can be no doubt. The area included without authority is so vast that it can only be regarded as a plain disregard of the statute.

We need not determine in this case whether or not the corporation was wholly void. It is enough that it was void in so far as the land of the relator is concerned. The lighting district, and the defendants as *ex officio* its managing board, were without authority to exercise any of the powers given to them by the act of 1909 and the amendments of 1913 [Stats. 1913, p. 447] thereof, upon or over the relator's land. To that extent, at least, the defendants claimed and usurped a corporate franchise which they did not lawfully possess.

The respondents call our attention to the act of May 29, 1915, effective August 8, 1915 (Stats. 1915, p. 939), declaring that every lighting district established under the provisions of the act of 1909, by resolution of the board of supervisors of the county, entered in its minutes, is a valid lighting district from the date of such order, and that all proceedings and actions of such district under said law are ratified, affirmed, and declared to be legal. This district was formed in August, 1912. The judgment in this case was given April 24, 1913, and the appeal was filed in this court on July 21, 1913. Section 10 of the act of 1909 itself declares that the order establishing the district entered in the minutes of the board of supervisors is conclusive of the regularity of all prior proceedings and of the existence and validity of the district.

A curative act or a conclusive evidence clause in a statute is effective to cure all defects resulting from a failure to comply with provisions which are merely directory of the mode of the exercise of the power. But defects and omissions which go to the jurisdiction of the board to act at all, and which make their action absolutely void, cannot be cured in this manner. (*Ramish* v. *Hartwell*, 126 Cal. 443, [58 Pac. 920] ; *Chase* v. *Trout*, 146 Cal. 350, 359, [80 Pac. 81] ; *Kelly* v.

*Luning,* 76 Cal. 309, [18 Pac. 335] ; *People* v. *Lynch,* 51 Cal. 15, 19, [21 Am. Rep. 677] ; *Brady* v. *King,* 53 Cal. 44; *People* v. *Goldtree,* 44 Cal. 323.)   In *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112, 174, [41 L. Ed. 369, 17 Sup. Ct. Rep. 56], the United States supreme court had under consideration the validity of proceedings for the formation of an irrigation district in this state and of the assessments made by such district.   In all substantial particulars regarding this question the act was similar to the lighting district act here involved. The court recognized the fact that the formation of such districts involved two distinct features, one of which was the creation of a public corporation and the other the levying of an assessment or special tax upon property benefited by the proposed improvement.   With respect to the creation of the corporation the court said: ''There is nothing in the essential nature of such a corporation, so far as its creation only is concerned, which requires notice to or hearing of the parties included therein before it can be formed.   It is created for a public purpose, and it rests in the discretion of the legislature when to create it and with what powers to endow it.'' (See, also, *People* v. *California Fish Co.,* 166 Cal. 576, 606, 610, [138 Pac. 79].)   With respect to the other consequences the court said: ''In the act under consideration, however, the establishment of its boundaries and the purposes for which the district is created, if it be finally organized by reason of the approving vote of the people, will almost necessarily be followed by and result in an assessment upon all the lands included within the boundaries of the district.   The legislature thus in substance provides for the creation not alone of a public corporation but of a taxing district whose boundaries are fixed, not by the legislature, but, after a hearing, by the board of supervisors.''   The court then proceeds to declare that when the power to form such district is delegated to a local board or tribunal, it acts judicially in fixing the boundaries, and the parties whose lands are proposed to be included are entitled to a hearing upon the question of benefits, before the formation of the district, and to have their lands excluded if it appears that they are not benefited.   Of like effect is *Spencer* v. *Merchant,* 125 U. S. 345, [31 L. Ed. 763, 8 Sup. Ct. Rep. 921] ; *Parsons* v. *District of Columbia,* 170 U. S. 45, 52, [42 L. Ed. 943, 946, 18 Sup. Ct. Rep. 521] ; *Londoner* v. *Denver,* 210 U. S. 373, 385, [52 L. Ed. 1103, 28

Sup. Ct. Rep. 708], and *Brookes* v. *Oakland,* 160 Cal. 423, [117 Pac. 433]. The act of 1909 provided for no hearing upon this question. In effect it gave to twenty-five taxpayers and residents of any unincorporated town or village the power to determine what land should be included in the district to be formed, and made no provision for any inquiry as to benefits or change of the boundaries fixed by them in their petition or for any hearing upon the subject. Under the above decisions the attempt thus to form a local taxing district is without legality and void. This was expressly decided with respect to a similar statute in *Moulton* v. *Parks,* 64 Cal. 166, [30 Pac. 613], and *Brandenstein* v. *Hoke,* 101 Cal. 131, [35 Pac. 562]. The conclusion necessarily follows that all proceedings imposing taxes upon the land of the relator are absolutely void because of the lack of jurisdiction to act in the matter. Under the decisions above cited the Curative Act of 1915 was ineffective to revive or validate the previous proceedings of the district. These points relating to the Curative Act have not been argued by counsel on either side.

There are other questions not argued which also may arise in the future progress of this case and which we think it well to mention. It may be claimed that the validating act, though ineffective to legalize taxes previously levied, had the effect to create anew a corporation for municipal purposes embracing the entire district. If so, the question would arise whether such new corporation possessed the powers defined in the act of 1909, or was left without defined powers, as suggested in *People* v. *California Fish Co.,* 166 Cal. 576, 610, [138 Pac. 79]. Furthermore, on May 21, 1915, practically all the territory included in this lighting district, except the 320 acres constituting the village of Owensmouth, was annexed to and became a part of the city of Los Angeles. Under its charter that city has full power and control of its streets, of all conduits and apparatus for the transmission of electricity therein, and of the granting of franchises for such purposes. (City Charter, sec. 2, subd. 7, Stats. 1909, p. 1291; sec. 2, subd. 25, Stats. 1905, p. 994; sec. 31, Stats. 1889, p. 464; sec. 146, Stats. 1905, pp. 984, 999.) As these matters come within the domain of municipal affairs, it may be doubted whether the legislature has any power to provide for the creation of lighting districts, or to create them directly, within

the boundaries of a city having such powers under a free-holder's charter. It may also be claimed that the validating act is in effect a mere evasion of the constitutional mandate against the creation of corporations for municipal purposes by special laws. (Art. XI, sec. 6.) Upon all these questions we express no opinion. The attempt to validate a tax levied by a pretended corporation having no legal authority over the property taxed would, if given effect, be equivalent to the imposition of an obligation by statute without due process of law. For the reasons we have given we think the court below erred in sustaining the demurrer to the complaint and that the case should be remanded for further proceedings.

The judgment is reversed.

Henshaw, J., Sloss, J., Melvin, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.