[Civ. No. 3538.   Fourth Dist.   Mar. 11, 1947.]

CLYDE H. PETER et al., Appellants, v. BOARD OF SUPERVISORS OF KERN COUNTY et al., Respondents.

Wellborn, Mitchell, Barrett & Rodi and Harvey, Johnston, Baker & Palmer for Appellants.

Norbert Baumgarten, County Counsel, for Respondents.

MARKS, J.—This is an appeal from a judgment in favor of respondents in a proceeding in certiorari in which the petitioners sought to annul an order of the Board of Supervisors of Kern County changing the boundaries of the Buttonwillow Union School District by annexing to it a portion of the Belridge School District.

The Buttonwillow Union School District is a union elementary school district organized and existing under what are now the provisions of chapter 9, division 2 of the Education Code, with all the territory of its component elementary districts lying within Kern County. The Belridge School District is an elementary school district organized and existing under what is now chapter 7, division 2 of the Education Code. It is stated in the briefs that the Buttonwillow Union School District had a surplus of children and a deficiency in assessed valuation of property when compared with the Belridge School District, the difference in assessed valuation being caused by the existence of valuable oil properties in the latter district.

Counsel have filed exhaustive briefs in which many questions are argued. Because of the view we will take of the case it will be unnecessary to consider many of them.

On December 20, 1945, a petition containing ten signatures was presented to the Superintendent of Schools of Kern County to change the boundaries of the Buttonwillow Union School District. He set the petition for hearing and on January 14, 1946, transmitted it to the board of supervisors with a letter stating that he had examined the petition and had found it sufficient and properly signed. Nine of the signers of the petition resided in the Buttonwillow Union School District and one in the Belridge School District. On January 7, 1946, the sole signer residing in the Belridge School District filed a letter with the superintendent of schools requesting that her name be withdrawn from the petition, because, as she claimed, she had signed it while relying on misrepresentations made to her. She also wrote a similar letter to the board of supervisors making the same request for like reasons.

Various protests were filed against granting the petition and the superintendent of schools through his administrative consultant recommended that it be denied.

The original petition requested the addition of 42 sections and two fractional sections to the Buttonwillow Union School District. After a hearing the board of supervisors eliminated twelve sections and granted the petition as to the balance of the territory.

The petition for a writ of review of the order was filed on February 6, 1946, and an amended petition on February 19, 1946. No writ was issued on the original petition and there is no evidence of service of that petition on respondents. A writ requiring respondents to certify all the annexation papers and proceedings to the superior court for review was issued on February 19, 1946.

On February 26, 1946, respondents filed a notice of motion to strike from the files the original petition on the ground that it had not been served before filing, and also the amended petition. On March 4, 1946, the trial court struck the original petition, filed February 6, from the files and denied the motion to strike the amended petition with the provision that it "be considered as the original petition."

On May 10, 1946, the trial court affirmed the order of the board of supervisors and discharged the writ of review. This appeal followed.

It is elemental that in proceedings of this kind the order under attack can only be vacated if the board of supervisors exceeded its jurisdiction in making it. (*Garvin* v. *Chambers*, 195 Cal. 212 [232 P. 696]; *Nider* v. *City Commission*, 36 Cal.App.2d 14 [97 P.2d 293].) It is equally true that the jurisdiction of the board of supervisors in this case was initiated by and was dependent upon a proper and sufficient petition being presented and filed; that if there was no such proper and sufficient petition before it the board of supervisors had no jurisdiction to act.

The Education Code is divided into various divisions, chapters and articles dealing with various classes of public schools. Chapter 7 of division 2 has to do with elementary school districts. Chapter 8 has to do with joint elementary school districts. Chapter 9 has to do with union and joint union elementary school districts. The differences between these various classes of school districts are not important here so they need no consideration. It is sufficient to point out that

there are differences and that the Legislature has seen fit to provide certain variations in the rules concerning each class.

Article 5, chapter 7, division 2 (§§ 2501, 2502, 2503), of the Education Code has to do with the change of boundaries of school districts, without specifying the class or kind of district to which its provisions apply. However, the article is a part of chapter 7, division 2 of the Education Code, the provisions of which apply to elementary school districts. It is clear from the record that the proceedings before us were initiated under the provisions of section 2502 which requires the petition to change the boundaries of school districts to be signed by ''at least 10 electors, residing in the districts affected by the proposed change of boundaries.''

Section 2896 of the Education Code is found in chapter 9, division 2 of that code, the provisions of which relate to union or joint union school districts. That section provides as follows: ''A portion of a school district may be added to a district which is a part of a union or joint union school district pursuant to Article 7 of Chapter 7 of this division.''

Section 2561 of the Education Code is a part of article 7, chapter 7 of division 2 and provides as follows:

''Two or more contiguous elementary school districts may at any time be united to constitute but one district, whenever a petition signed by a majority of the electors residing in each of the districts is presented to the superintendent of schools. The petition shall be acted upon in the same manner as in the cases of the formation of new school districts.''

In this connection it should be observed that section 2561 provides for the joining of two or more contiguous elementary school districts while we have here the addition of a portion of an elementary school district to a union school district by changing the boundaries of the latter which is expressly authorized by section 2896. That section refers to article 7, chapter 7 of division 2, and it is rather clear that its intention is to incorporate into section 2896 the procedure set forth in section 2561 to accomplish the addition of a portion of a school district to a union school district as no other procedure to accomplish this end is found in any of the provisions relating to union school districts. Thus we have in the chapter relating to union school districts an express power to add to such a school district, or perhaps to one of its elementary school districts, a portion of another school district upon a petition ''signed by a majority of the electors residing in each of the districts.'' No such petition was signed, presented to

the county superintendent of schools or filed with the board of supervisors in this case.

Counsel for respondents argues that as the provisions of section 2502 are not by their terms limited to elementary school districts we should not reject its provisions as applying to the facts of this case or at least we should regard them as an alternative method of changing the boundaries of an elementary school district which forms a part of a union school district.

The answer to the argument is found in section 4482 of the Political Code which provides as follows:

"If the provisions of any chapter conflict with or contravene the provisions of another chapter of the same title, the provisions of each chapter must prevail as to all matters and questions arising out of the subject matter of such chapter."

This section has been construed to mean that where the provisions of one chapter relate to one subject and furnish the procedure to accomplish the purposes of the chapter, that procedure must be followed to the exclusion of other procedure set forth in another chapter having to do with another although it may be a related subject. (*Odd Fellows' Savings Bank* v. *Banton,* 46 Cal. 603; *Southern Pacific R. R. Co.* v. *Painter,* 113 Cal. 247 [45 P. 320]; *Estate of Dolbeer,* 153 Cal. 652 [96 P. 266, 15 Ann.Cas. 207]; *In re Kennerly,* 190 Cal. 774 [214 P. 857]; *Hubbard* v. *Superior Court,* 9 Cal.App. 166 [98 P. 394]; *People* v. *Fink,* 121 Cal.App. 14 [8 P.2d 493]; *Heard* v. *Board of Administration,* 39 Cal.App.2d 685 [104 P.2d 47].) We are confronted with a situation where the provisions of one chapter relating to union elementary school districts conflict with the provisions of another chapter relating to elementary school districts and where, under the foregoing authorities, we must hold that the provisions relating to union elementary school districts must control.

Thus the conclusion follows that as the petition involved in this case did not purport to be "signed by a majority of the electors residing in each of the districts," as required by section 2561 of the Education Code, and as it was admittedly prepared and signed and all proceedings were had under section 2501, et seq., it was insufficient to confer any jurisdiction on the board of supervisors to act on it. The cases of *Washburn* v. *Mann,* 73 Cal.App. 302 [238 P. 721]; *Multer* v. *Keppel,* 76 Cal.App. 517 [245 P. 218]; and *Slater* v. *Kesey,* 102 Cal.App. 266 [282 P. 1021], support this result.

Respondents seek to escape this conclusion on two grounds. First: That the reference in section 2896 to article 7 of chapter 7 of division 2 of the Education Code was a typographical error, the legislators meaning to refer to article 5 of chapter 7; and, second: That any defects in the proceedings were cured by the Validating Act of 1946. (Stats. 1946, 1st Ex. Sess., ch. 17.)

The argument that there is a typographical error in section 2896 of the Education Code is based on the history of the legislation on the subject covered by it. Section 1591 of the Political Code contained legislation on the same subject, the last paragraph of which covered the same ground as section 2896 of the Education Code. That paragraph adopted the procedure set forth in section 1577 of the Political Code which was substantially the same as sections 2502 and 2503 of the Education Code, which procedure was followed in the instant case. These sections of the Political Code were superseded by sections 2.264 and 2.160 of the School Code in 1929. Section 2.264 was substantially the same as section 2896 of the Education Code and adopted the procedure established by section 2.160 of the School Code which was substantially the same as section 2561 of the Education Code except that the School Code required the petition to be "signed by a majority of the heads of families residing in each of said districts" while the Education Code requires the petition to be "signed by a majority of the electors residing in each of the districts." If there was any typographical error in the Education Code the same error occurred in 1929, in adopting the procedure of section 2.160 of the School Code to accomplish the ends of section 2.264, and was perpetuated in 1943, in adopting section 2896 of the Education Code. This indicates that the change in the procedure was made intentionally for if there had been a typographical error in the 1929 enactment certainly it should have been discovered by 1943, and should have been corrected then.

Respondents can draw no support from the Validating Act of 1946. Subdivision "d" of section 7 of that act provides as follows: "This act shall not operate to confirm, validate, or legalize any act, proceeding, or other matter the legality of which is being contested or inquired into in any legal proceeding now pending and undetermined."

The Validating Act was passed as an emergency measure and was signed by the governor and filed with the secretary

of state on February 12, 1946. The complaint in this action was filed on February 6, 1946, the amended complaint on February 19, 1946, and the original complaint was not stricken from the files by order of court until March 7, 1946. Any assumption that this order could be supported would be a violent one on the ground specified. ██ The requirements as to service when the petition is filed, in section 1107 of the Code of Civil Procedure, would seem to be more directory than mandatory as the court may act on the petition without any service if it decides to do so. Under these circumstances it would seem that service might be made after the petition is filed if the court should decline to proceed in the matter without service. The provisions as to service and points and authorities in opposition to the issuance of a writ under the prayer of a petition would seem to be more for the benefit of the court than for the advantage of the parties. However, we do not need to decide that question at this time. The complaint sought to inquire into and contest the legality of the proceedings resulting in the change of boundaries and the proceeding was pending and undetermined when the Validating Act of 1946 went into effect. An action is commenced when the complaint is filed. (Code Civ. Proc., § 350.) It is deemed pending from the time of its commencement until its final determination. (Code Civ. Proc., § 1049; *Collins* v. *Ramish*, 182 Cal. 360 [188 P. 550].)

██ It follows that under its express terms the Validating Act of 1946 did not purport to cure the defects in the proceedings under attack here as there was an action pending attacking the proceedings when the Validating Act went into effect. Further, the act did not purport to cure jurisdictional defects in proceedings. (See § 7, subd. a.) Nor should it do so. (*People* v. *Van Nuys Lighting District*, 173 Cal. 792 [162 P. 97, Ann.Cas. 1918D 255]; *Miller* v. *McKenna*, 23 Cal.2d 774 [147 P.2d 531].)

As the board of supervisors did not have before it a sufficient petition to give it jurisdiction over the matter, its order cannot be sustained.

The judgment is reversed.

Barnard, P. J., and Griffin, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied May 8, 1947. Traynor, J., voted for a hearing.