[Civ. No. 23884. Second Dist., Div. Two. Jan. 14, 1960.]

EDWARD A. WINE et al., Appellants, v. COUNCIL OF THE CITY OF LOS ANGELES et al., Respondents.

158

160

Phill Silver for Appellants.

Stanley Mosk, Attorney General, Bonnie Lee Martin, Deputy Attorney General, Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, Claude E. Hilker, Deputy City Attorney, and James J. Arditto for Respondents.

FOX, P. J.—Petitioners sought by mandamus and certiorari (1) to review and annul the action of the Los Angeles City Council approving a tentative subdivision map of certain property, and (2) to review, terminate and annul the proceeding by which said property was annexed to the city. The court refused to issue either an alternative writ of mandamus or a writ of certiorari. Petitioners have appealed.

The undisputed facts may be summarized as follows: Some time prior to September 3, 1958, the owners of a large tract of uninhabited land in the San Fernando Valley instituted proceedings to subdivide this land and to procure its annexation to the city of Los Angeles. The city planning-commission approved a tentative tract map of the subdivision, subject, however, to 57 conditions. On September 3, 1958, the city council approved the tentative tract map and imposed all the conditions except two. These two conditions were (1) that the owners pay a sewerage connection charge of $915 per acre into the general sewerage fund in addition to the usual charge of $400 per acre; and (2) that the owners pay the cost of improving certain streets which were not within the boundaries of the proposed subdivision. The city council had been advised by the city attorney that these conditions were probably illegal and therefore refused to impose them. After approving the tentative tract map, the council approved annexation of the subdivision to the city. On September 24, 1958, the council adopted an ordinance annexing the land which the mayor signed on September 26, and on October 3, this ordinance was first published. Thereafter, on October 31, petitioners filed a petition for writs of mandamus and certiorari naming the city council as the only respondent. On November 3, 1958, an alternative writ of mandamus and a writ of certiorari issued, directed solely to the city council. These writs were purportedly served the same day on the city council by serving the city clerk.

Also on the same day, the city clerk mailed certified copies of the annexation ordinance to the secretary of state for filing. Due to a clerical error, corrected copies of the ordinance were mailed to the secretary on November 5, and were filed by the secretary on November 6. The certificate of such filing by the Secretary of State was filed, for recordation, with the county recorder of Los Angeles County on November 21, 1958.

Service of the writs was quashed on November 21, 1958, for the reason that they had been served on the city clerk instead of the city council to which body they were directed, and for the additional reason that the copies served were not true copies. All restraints were dissolved without prejudice to an application for a new writ.

On December 3, 1958, petitioners filed a supplemental and amended petition, which again sought both writs of mandamus and certiorari. This petition again named the city council as

respondent and for the first time named the other respondents as parties.[1] Petitioners allege five separate causes of action, the fourth and fifth not having been included in the original petition.

Petitioners served notice on the respondents of their intention to apply for an alternative writ of mandate and a writ of certiorari. Respondents filed points and authorities in opposition thereto. A hearing was held January 9, 10, 11, 1959, before Judge Kincaid, at the conclusion of which he denied the applications out of hand. Hence this appeal.

In view of the questions raised by the appeal, it is necessary to set forth in some detail the allegations contained in the supplemental and amended petition. The first cause of action alleges: That petitioners are taxpayers and residents of the city of Los Angeles and that they brought this action on behalf of themselves and all other taxpayers of the city; that this action was brought under the provisions of section 11525 of the Business and Professions Code;[2] that petitioners, as "aggrieved persons" and as taxpayers, seek review of the decision of the council approving the tentative tract map without imposing the two conditions set out above; that such action by the council was unreasonable and contrary to law and that a fair hearing was not held; that the advice of counsel for the city that the two conditions could not lawfully be imposed was wrong and thus the refusal to impose these conditions was unreasonable; that the council did not consider the evidence previously presented to the planning commission in regard to the subdivision; and that these petitioners and all other taxpayers of the City "will suffer great financial detriment" by reason of the council's action.

The second cause of action, after incorporating by reference all the provisions of the first cause of action, alleges in sub-

---

[1] These new respondents are: The city of Los Angeles, the Secretary of State, and the owners of the land involved. The county of Los Angeles was not made a party.

[2] The pertinent portion of section 11525 provides:

"Control of the design and improvement of subdivisions is vested in the governing bodies of cities and of counties but, in all matters concerning such design and improvement, any decision by a governing body is subject to review as to its reasonableness by the superior court in and for the county in which the land is situated. Every county and city shall adopt an ordinance regulating and controlling the design and improvement of subdivisions.

"Any subdivider or person claiming to be aggrieved by the decision of a governing body may within 90 days after the rendering of the decision bring a special proceeding in the superior court to determine the reasonableness of the decision. . . ."

stance: That petitioners seek a writ of certiorari to review the annexation proceedings; that the annexation ordinance is void since it is based on a tentative tract map which was approved "contrary to law"; that "annexation proceedings can only be predicated upon a tract map that has been lawfully approved by the governing agency"; that the action of the city clerk in filing the annexation ordinance with the Secretary of State was a nullity since that action was taken after the filing of the original petition; and that the annexation will "cause a burden on the taxpayers of the City of Los Angeles in that municipal funds will be expended for public improvements and other purposes and that such expenditure will illegally waste the funds of the City and increase the tax burden on the petitioners and other taxpayers."

The third cause of action alleges: That the subdividers had prior to the adoption of the annexation ordinance, sought and obtained financial assistance from the county of Los Angeles toward the cost of construction of roads and bridges in the subdivision; that the subdividers had conspired among themselves to obtain this financial assistance while at the same time intending to apply for annexation to the city; that the expenditure of county moneys under these circumstances violates public policy and the intent of the annexation statutes and; that such expenditure of county funds "constitutes a gift of public funds contrary to the prohibition of Section 31, Article IV of the State Constitution." This cause of action appears to be a proceeding in mandamus to declare the annexation ordinance null and void.

The fourth cause of action particularizes the "facts" which petitioners allege constituted a denial of a fair hearing before the city council as previously alluded to in the first cause of action. These allegations are: That the members of the council erroneously relied upon the advice of the city attorney as to the legality of imposing the two conditions above mentioned; that the owners of the property offered to pay $50,000 toward the cost of improvement of offsite roads and that such offer influenced the vote of the council; that the reports prepared by various departments of the city relating to the costs to the city growing out of the annexation of the property were not read to the council; that the testimony before the planning commission was not read to the council; and that since the council had previously established a legislative policy not to impose annexation fees, the question of a fee in this case was not fairly decided.

The fifth cause of action relates to the actions taken by the city clerk (in forwarding copies of the ordinance to the Secretary of State for filing) and of the Secretary of State (in accepting and filing the ordinance) subsequent to the issuance of the original writs, the service of which was quashed. This appears to be an attempt to invoke the "unclean hands" doctrine.

Petitioners had no right, as a matter of course, to the issuance of the alternative writ of mandate or the writ of certiorari. (*Patterson* v. *Board of Supervisors*, 79 Cal.App.2d 670, 671 [180 P.2d 945] ; *Birch* v. *Orange County*, 191 Cal. 235 [215 P. 903].) Upon filing their amended and supplemental petition, petitioners gave notice to all the respondents of their intention to apply for issuance of both of these writs. Under such circumstances, respondents were authorized by section 1107 of the Code of Civil Procedure to submit points and authorities in opposition to the application (which they did) and the trial court was authorized to deny the application summarily without a hearing on the merits. (*Patterson* v. *Board of Supervisors, supra; Wilson* v. *Los Angeles County Civil Service Comm.*, 103 Cal.App.2d 426, 430 [229 P.2d 406].)

We have determined that the court below properly denied the issuance of the writs for three basic reasons: (1) That petitioners did not have a sufficient beneficial interest as "taxpayers" to entitle them to challenge either the approval of the subdivision or the annexation proceedings; (2) that they have no standing as "aggrieved" persons under section 11525, Business and Professions Code, to attack either of these proceedings; and (3) that in any event their amended and supplemental petition failed to show a sufficient basis for the issuance of either of the requested writs.

With respect to the right of petitioners to maintain this special proceeding, there are certain clearly established principles. In *Schaefer* v. *Berinstein*, 140 Cal.App.2d 278, at page 289 [295 P.2d 113], the court stated: "In this state it is thoroughly established that a taxpayer, under certain circumstances, has the right to sue in a representative capacity. (Citing cases.)" The court then enumerated these "certain circumstances" as ". . . fraud, collusion, ultra vires, or a failure on the part of a governmental body to perform a duty specifically enjoined." No facts showing fraud, ultra vires, collusion, or a failure on the part of the Council to perform any specifically enjoined duty are alleged in the supplemental petition.

*Potter* v. *City Council of Port Hueneme,* 102 Cal.App.2d 141 [227 P.2d 25], is particularly applicable to the present proceeding. In that case, the petitioners were alleged to be taxpayers, land owners and electors of Ventura County and the city of Port Hueneme. Their petition for a writ of mandate was based on an alleged illegal action about to be taken by the city council with regard to the annexation of certain land which constituted a naval reservation. Petitioners' claim of a "beneficial interest" giving them standing to challenge the proposed annexation was stated (p. 145) by the court as follows: "It is alleged that 'Oxnard Harbor District has a substantial outstanding bonded indebtedness . . . upon the lands. of petitioners . . .; that the United States Navy leases Pier No. 1 to Oxnard Harbor District, and from the revenue thus derived, [is] retiring said bonds together with the money received from the United States Navy; that by reason thereof, petitioners have a beneficial interest in said annexation and the continued harmonious relations between the United States Navy and Oxnard Harbor District and Ventura County.' " While the court recognized that in certain cases, taxpayers may sue in a representative capacity to procure the performance of a public duty, it further held: "In the instance case petitioners are attempting to challenge the validity of a legislative act rather than seeking to enforce a definite public duty enjoined by law. In such a situation it was certainly petitioners' duty to make a clear showing that respondents either acted without power or failed to obey statutory provisions relating to annexation. Unless there be such a showing, there should be no judicial interference with legislative process. Whether the legislation is wise or unwise is, of course, not a matter for discussion."

■ The court quoted with approval 16 California Jurisprudence, page 853 : " 'It is a settled general rule that a private individual may apply for this remedy [mandamus] only in those cases where he has some private or particular interest to be subserved, or some particular right to be preserved or protected by the writ, independent of that which he holds with the public at large.' Unless this special right is made to appear, the application should be denied." The court then held that the petitioners' alleged beneficial interest was "at best of a general nature" and not sufficient to entitle them to challenge the proposed annexation.

■ In the present case, the only beneficial interest alleged in behalf of petitioners with regard to the annexation proceedings is found in their second cause of action where they

allege: ''The Respondents, unless ordered to desist, intend to and will expend municipal funds for public improvements and for other purposes in said land, and will thereby illegally waste the funds of the City as well as increase the tax liability of the Petitioners herein and all other taxpayers similarly situated.'' Under the authority of the Potter case, *supra*, these general allegations do not show a sufficient beneficial interest in the petitioners to entitle them to bring this special proceeding.

However, petitioners also aver that they are properly before the court by virtue of the provisions of section 526a of the Code of Civil Procedure, which provides for suits by resident taxpayers to restrain or prevent any ''illegal expenditure of, waste of or injury to,'' the property of a city or county. The only cause of action which attempts to allege facts that might conceivably warrant relief under section 526a is the third. In that cause of action, petitioners allege that the *county* of Los Angeles expended, without authority, a large sum of money to construct roads and bridges within the proposed subdivision and that such expenditure was brought about by subterfuge on the part of the owners of the subdivision and constitutes a gift of public funds in violation of article IV, section 31, of the state Constitution. Obviously, such an asserted wrong on the part of the county may not be redressed by a suit against the city. Petitioners further allege that the annexation of this territory constitutes a circumvention and evasion of section 31 of article IV of the Constitution, and is against the public policy of the state. The fact, if it be such, that the county has made unwise or even illegal expenditures in improving the area in question can have no bearing on the city's right to annex it. Finally, in this connection petitioners charge that the city, if not ordered to desist, will expend municipal funds for public improvements and for other purposes in said area and thereby waste the funds of the city. No facts, however, are alleged to support this general charge. Of course, upon the annexation of this territory the city may make appropriate expenditures for public improvements. It is thus apparent that petitioners have made no showing sufficient to maintain a representative suit under 526a.

Petitioners' further suggestion that they may properly bring this suit under the provisions of section 1094.5 of the Code of Civil Procedure is without merit. That section provides for judicial review of *administrative* orders or decisions and does not authorize the review of legislative

action. The action of the city council in adopting the annexation ordinance was legislative and not administrative. (*American Distilling Co.* v. *City Council of Sausalito,* 34 Cal.2d 660, 665 [213 P.2d 704, 18 A.L.R.2d 1247].) Petitioners nowhere allege that the city council exceeded its statutory authority in the annexation proceedings. Hence section 1094.5 has no application.

 Finally, petitioners contend that they are entitled to maintain this suit on the theory that they are "aggrieved" within the meaning of section 11525, Business and Professions Code, which gives, *inter alia,* any person aggrieved by the decision of the governing body of a city or county the right to a judicial review of the reasonableness of such body's decision as to the design and improvement of a proposed subdivision. (See footnote 2, *supra.*) This section does not deal with annexation proceedings. Therefore, it does not give petitioners standing to attack the annexation, which is separate and apart from the control of subdivision design and improvement. The next question then is: Are petitioners "aggrieved" persons by the decision of the city council and as such entitled to challenge the reasonableness of its action as to the design and improvement of the subdivision? Petitioners do not allege that they or either of them own any property in the subdivision or any property that will be affected by the decision in any manner different from its effect upon the property of all *other* property owners and taxpayers in the city. They do not show any detriment peculiar to themselves as distinguished from the general interest that is theoretically shared by all the property owners of the city. (See *Blumberg* v. *Hill,* 119 N.Y.S.2d 855.) This interest is remote and indirect and not such as to constitute every property owner and taxpayer in the city an aggrieved person with respect to the decision of the city council as to the design and improvement of this particular subdivision. (See *Clark* v. *Warner,* 85 Okla. 153 [204 P. 929].) If the Legislature had intended that every taxpayer who was thus remotely and indirectly affected by the decision of "a governing body" with respect to the design and improvement of a subdivision should have the right to test the reasonableness of that decision it could easily have said so in clear and unmistakable language. It is apparent that petitioners are not "aggrieved" within the meaning of section 11525, Business and Professions Code. Hence they are

in no position to challenge the reasonableness of the city council's action in approving the tentative tract map.

From the foregoing we conclude that petitioners have not shown either a beneficial interest or a statutory right giving them standing to maintain this suit.

■ Furthermore, in any event, the amended and supplemental petition does not show that petitioners are entitled to any relief. Judge Kincaid did not abuse his judicial discretion in denying out of hand the application for the writs. Under section 35318, Government Code, annexation is complete from the date of filing of the certified copy of the annexation ordinance by the Secretary of State. The record shows that such ordinance was filed by the Secretary of State on November 6, 1958. Absent any effective legal restraint, the territory became a part of the city on that date. (Gov. Code, § 35318.)

While the trial court had issued, ex parte, an alternative writ of mandamus and a writ of certiorari on November 3d there had been no effective service of either of said writs. As a consequence there was no legal restraint upon any of the respondents with respect to any of the steps necessary to complete the annexation. It therefore follows that the annexation was complete when the Secretary of State filed the certified copy of the ordinance on November 6, 1958. The amended and supplemental petition was filed on December 3d and the hearing on the issuance of an alternative writ was held January 7 to 9, 1959. Since the annexation had been completed and the territory had become a part of the city over which it exercised jurisdiction, it is clear there was no basis on which the court could properly issue an alternative writ of mandate. (See *American Distilling Co.* v. *City Council of Sausalito, supra,* at p. 667.) ■ But, argue petitioners, the amended and supplemental petition relates back to the date of filing the initial petition and their right to the issuance of the alternative writ was determinable as of that time. It is the general rule that amended pleadings relate back to the time of filing the first pleading. But that principle has no application to the problem here posed. By their amended and supplemental petition, petitioners are attempting to lay the foundation for an alternative writ of mandate requiring the city to do or refrain from doing certain acts, or to show cause why it has not complied with the order. But when the amended and supplemental petition was

filed all acts on the part of the city and Secretary of State to which the petition was directed had been performed. Under such circumstances the doctrine of relation back is wholly inapplicable. It cannot be used to undo that which has already been done.

Petitioners' reliance on *Peter* v. *Board of Supervisors*, 78 Cal.App.2d 515 [178 P.2d 73] (a proceeding in certiorari), is misplaced. The question there, insofar as the doctrine of relation back is concerned, was whether the proceeding was pending from the time of filing the initial petition or only from the date an amended petition was filed. No such problem is presented in the instant case.

Certiorari may be used to test the jurisdiction of an inferior board or tribunal. Upon a proper showing the writ may issue either where there is no authority in the board or tribunal to act on the matter in question, or where such body having jurisdiction of the parties and subject matter acts beyond its power. (*Fortenbury* v. *Superior Court*, 16 Cal.2d 405, 408 [106 P.2d 411].) Thus upon a sufficient showing it may be used to test the jurisdiction of a city council in annexation proceedings. (*City of Anaheim* v. *City of Fullerton*, 102 Cal.App.2d 395 [227 P.2d 494]; *Peter* v. *Board of Supervisors, supra*.) In the instant case petitioners have made no showing sufficient to entitle them to such relief. They do not challenge the power of the city to annex uninhabited territory. Their contention is that the city council acted in excess of its statutory authority by proceeding to annex the territory in question prior to valid approval of the tentative tract map. Their position is that annexation cannot be effected unless and until the tract map has been properly approved; that the action of the city council approving the tract map was unreasonable, and therefore the annexation proceedings were not valid. This attack on the annexation is completely unmeritorious. While it is true that approval by the city council of a subdivision which is situated outside the boundaries of the city must be conditioned upon annexation of that property to the city (Bus. & Prof. Code, § 11531), the converse is not true. There is no authority for the proposition that valid subdivision proceedings are a prerequisite to a valid annexation of such property. Petitioners have failed to show either a lack or an excessive exercise of authority on the part of the city council in connection with the annexation proceedings. Con-

sequently Judge Kincaid properly denied out of hand the application for the writ of certiorari.

Nor have petitioners alleged facts which would justify the issuance of an alternative writ of mandate under section 11525 of the Business and Professions Code. (See footnote 2, *supra*.) This section provides that "special proceedings" may be brought by "any subdivider or person claiming to be aggrieved" to determine the "reasonableness" of the decision of the governing body. Such decision of the governing body is limited by the same section to those matters which relate to the "design" and "improvement" of the subdivision. Unless the action of the city council which is here challenged involved the "design" or "improvement" of the subdivision, no review of its reasonableness is authorized by section 11525. The Business and Professions Code defines "design" and "improvement" in sections 11510 and 11511 respectively. Section 11510 reads: " 'Design' refers to street alignment, grades and widths, alignment and widths of easements and rights of way for drainage and sanitary sewers and minimum lot areas and width." Section 11511 reads: " 'Improvement' refers to only such street work and utilities to be installed, or agreed to be installed by the subdivider on the land to be used for public or private streets, highways, ways, and easements, as are necessary, for the general use of the lot owners in the subdivision and local neighborhood traffic and drainage needs as a condition precedent to the approval and acceptance of the final map thereof." It only remains to be determined whether the two conditions which the council refused to impose with respect to the tract map approval here were within the above definitions.

The proposed condition that the subdividers pay an additional sewerage fee into the general sewer fund was not within the control of the city council as either a part of the design or as an improvement of the subdivision. Similar conditions were involved in *Kelber* v. *City of Upland*, 155 Cal.App.2d 631 [318 P.2d 561], wherein the court declared invalid two ordinances of the city of Upland which required the payment by subdividers of fees for the purchase of park and school sites and also a drainage fee "in lieu of the construction of drainage structures outside the subdivision." The court stated: "The imposition of such fees as a condition for the approval of such a map not only bears no relation to the requirements indicated in the statute [§ 11525, Bus.

& Prof. Code] but would directly impede the realization of what appears to be the intent and meaning of the act.''

As to the proposed condition that the subdividers pay the cost of improving offsite streets, petitioners rely on *Ayres* v. *City of Los Angeles,* 34 Cal.2d 31 [207 P.2d 1, 11 A.L.R. 2d 503]. They misconstrue that decision. The court there held only that, consistent with the Subdivision Map Act, the subdivider could be required to dedicate *subdivision property* for use in the widening of already existing streets. The Ayres case is not authority for the proposition that the subdivider may be required to pay the cost of improving offsite streets, nor may such meaning be ascribed to the statute. It follows that the two conditions were not within the control of the city council for the reason that neither was part of the ''design'' of the subdivision nor an ''improvement'' thereof. Therefore, no challenge to the reasonableness of the city council's decision relative to these two conditions was authorized by the statute. Consequently, petitioners failed to show that they were entitled to any relief with respect thereto.

In view of the foregoing, it is not necessary to discuss other questions raised by the parties in their briefs.

The order denying petitioners any relief is affirmed.

Ashburn, J., and Herndon, J., concurred.