THE STATE, WILLIAM H. BAILEY, PROSECUTOR, v. WILLIAM L. BROWN, COLLECTOR OF MANASQUAN.

1. The power of the legislature to fix the boundaries of municipal corporations and to select classes of property within such limits for taxation *for the public needs of such municipality is supreme*, subject only to the constitutional requirement of uniformity and generality in the exercise of such power.

2. Presumptive, not actual, benefit to the taxpayer underlie assessments for general taxes, as distinguished from special assessments for benefits; and rural land which lies within the limits of a municipal corporation, and which belongs to a class of property selected for taxation, cannot be relieved from a levy for municipal purposes, on the ground that it receives none or an inadequate benefit from the expenditure of the money so raised.

3. The right of a *de facto* assessor to make the assessment cannot be attacked by a taxpayer by a writ of *certiorari* to review the assessment.

On *certiorari*.

This writ brings up assessments for taxes in the borough of Manasquan for the year 1888 and for the year 1889.

Argued at June Term, 1890, before Justices SCUDDER and REED.

For the plaintiff in *certiorari*, *Frank P. McDermott*.

For the defendant, *William H. Vredenburgh*.

The opinion of the court was delivered by

REED, J. The taxes questioned are levied for borough purposes, the borough of Manasquan being incorporated

under the act for the formation of borough governments. *Rev. Sup.*, *p.* 44.

The first objection to the tax which is pressed by the counsel for the prosecutor is directed against the levy of any tax upon his property for the purpose of meeting the expenses of the borough government. This position is based upon the evidence that the land taxed is used as farm land, and is outside of the village of Manasquan as it exists as a fact. The testimony is, that the village, as it is built up, occupies about one-third of the territory included within the corporate limits. The other two-thirds of the territory consists of farming, meadow and marsh land.

The prosecutor swears that his land, used for agricultural purposes, receives no benefit from the existence of a borough, nor from the money expended by it.

In respect to this claim for immunity, there are a number of cases in the courts of Iowa, Kentucky and Nebraska in which the invalidity of such a tax is adjudged. The courts in these cases, by injunction or other process, have stepped in and arrested the proceedings to collect, on the ground that it was taking private property for public purposes without compensation; that it was confiscation and not taxation. Except in the courts of the states mentioned, the doctrine thus promulgated has no support in the jurisprudence of this country. The power of the legislature to fix the territorial limits of municipal corporations has never been doubted; indeed, is not questioned in the cases above noted. The power of the legislature to authorize the levying of taxes for any public purpose upon all the property within the municipality is indeed denied in those cases, but nowhere else.

The ground upon which the courts went was, that no benefit accrued to the party assessed, so his land, by reason of that, was non-assessable. They imported into the levy of a general tax the question of benefits to the taxpayer. If he was benefited, he could be assessed; otherwise, not.

It is perceived that if the matter of benefits to the taxpayer becomes a judicial problem, the courts cannot halt at the line

of no benefit in dealing with general tax levies.   The logical result of a judicial intervention at all carries the boundary of supervision into all degrees of benefit.   Is he benefited to the amount of the tax levied ?   If not, how much is he benefited, and a proportional abatement ?

The admission of such a power of inquiry would be entirely novel, and would overwhelm the courts with the duty of tax revision.

Actual benefit lies at the foundation of a valid special assessment for local improvements.   In the case of general taxation for governmental purposes benefit is presumed to accrue to all.   But it does not accrue to each one in the same manner or in equal degree.   Inequality is the rule arising out of the inevitable variations of personal environment.   Hundreds are assessed in a city for the expenses of electric lights who have to content themselves with gas or nothing; for sewers, when no sewer runs within a mile of their property; for public parks, which are located on the opposite side of the city, and are practically unreachable for the purposes of recreation, and for police, when such an officer is rarely visible.   Many of the levies for the support of these and similar features of municipal government are as inequitable as the levy of urban taxes upon rural property.   It has never been successfully urged that, because of the inequality of return, the tax was abatable.

The courts which have enjoined the collection of taxes upon agricultural land assessed for municipal purposes have not intimated that they would entertain jurisdiction of cases of taxation where there was. some but not an adequate benefit.

This was a ground set up in the case of State, Hoey, v. Collector of Ocean Township, against an assessment for taxes made upon property situated within the limits of a district under control of a municipal corporation known as "The Long Branch Police, Sanitary and Improvement Commission."   It was insisted that the prosecutor in that case was not liable to be taxed for police, fire department or lighting streets, because his property was some distance from street lights, police patrol

and the depository of the fire apparatus, and, therefore, he could have no benefit from them. It was held that these facts presented no ground upon which the taxpayer could be relieved from his assessment.

It is true that Mr. Justice Knapp, in his opinion, in speaking of rural lands, refused to say whether there might not be cases where the courts would relieve property entirely from taxation imposed purely for municipal purposes. But it seems to me that the *ratio decedendo* in that case precludes the admission of any distinction in favor of any class of property. For the doctrine laid down was, that the legislature was supreme, subject only to constitutional limitations, in dispensing the power of taxation to municipal corporations.

That the legislature could establish the territorial limits over which municipal government should extend, and that it might designate classes of persons and kinds of property to bear the cost, and if the tax be imposed upon such property by rules of uniformity, it becomes liable to its payment.

The sweep of such a doctrine covers all kinds of property which the legislature in its discretion, subject to the requirement of generality and uniformity enjoined by the constitution, chooses to include. Nor can there be any logical distinction between property which the court may think to be inadequately benefited and property which it may deem to be the recipient of no benefit. The supposed wrong to the taxpayer, although differing in degree, is, in each instance, identical in kind.

No reason can be suggested for judicial intervention in the case of a man whom the court may regard as being taxed for a purpose from which there flows to him no benefit which does not also justify the same action where the taxpayer may receive some, but a benefit obviously disproportioned to his assessment. The doctrine of the case of The State, Hoey, *v.* Collector of Ocean Township, which refused relief for an inadequate benefit, settles the question against the prosecutor.

This conclusion is fortified by the doctrine laid down in the case of *The State, Baldwin,* v. *Fuller,* 10 *Vroom* 576 ; *S. C.,* 11 *Id.* 615.

In this case the legislature had authorized the township committee to erect within the limits of the township of Montclair lamp districts for the lighting of the roads, and to cause the one-half the expense to be assessed upon the property within the said districts.

This tax was declared void, upon the ground that a general tax could not be placed exclusively upon a territory narrower in bounds than a political district. It was declared that any attempt to impose an assessment for any public purpose upon a part of a political corporation must be by special assessment limited to benefits, and not by general taxation.

Under the doctrine thus laid down, it would be impossible for the legislature to provide for the levy of these taxes exclusively upon the built-up district within the larger territory included within the corporation.

And the groundwork upon which this doctrine is built is, that all levies for public purposes must be imposed upon all property of the kind selected for taxation, within the territorial limits of the corporation for whose benefit the tax is raised. There is nowhere an intimation that, apart from constitutional restrictions, the legislature has not the power to define municipal boundaries and to select property for taxation for the public needs of such municipality. The present tax has been assessed in conformity with the standard erected by the legislature. An interference with the levy against the property of prosecutor, upon the ground urged, would lead to a judicial selection of property in defiance of the legislative selection. It would assert the principle that general taxes always rest upon the principle of actual instead of presumptive benefit to the taxpayer. There is no support for either position.

The second ground for the vacation of these taxes pressed is, that the assessor and collector were not legally elected and qualified to act, and that, therefore, the taxes were assessable .

by the township officers.    The facts upon which this conten-
tion is made are the following: The act of 1886 (*Rev. Sup., p.*
54, § 59) provides for the election of an assessor and collector
yearly in May.    They are to possess the same powers as town-
ship assessors and collectors.    *Pamph. L.* 1888, *p.* 140.    An
act was passed the same year (*Pamph. L.* 1888, *p.* 226) pro-
viding for the election of an assessor and collector at an annual
election on March 13th, 1888, provided the act should be
passed in time for the clerk to give five days' notice of the
election.    In anticipation of the passage of the act notice was
given and an election held, at which election an assessor and
collector were elected.    The act did not become a law till ten
days after the election.    Then another act was passed to cure
this irregularity.    *Pamph. L.* 1888, *p.* 525.    It provided
that an election so held in any borough in anticipation of the
passage of the former act should be valid.    This act is attacked
upon the ground that it is special legislation, and so a nullity.

I do not find it necessary to pass upon this question.    With-
out regard to this act, the official character of the assessor who
made this assessment is unassailable upon this proceeding.
The assessor who was elected at the election held on March
13th resigned and the present assessor was appointed.    The
appointment is attacked upon the ground that the written
resignation of the elected assessor is dated one day after the
date of the appointment.    He had, however, announced his
resignation verbally before the appointment.    But this is un-
important, for, even regarding the appointment as originally
invalid, the appointee went on and made the assessment.    He
acted and was recognized by the municipal authorities as the
assessor.

So, it appears that there was legal provision for the annual
election of an assessor and for the appointment of his successor
in case of resignation ; that an election was held upon notice,
but upon a wrong day.    He resigned, and an appointment
was made under a power to appoint, and the officer so ap-
pointed has performed all the functions of the office during
the year.    He is an officer *de facto*, whose official existence

cannot be attacked by a taxpayer on *certiorari.* *The State, ex rel. Mitchell,* v. *Tolan,* 4 *Vroom* 195; *State, Hoey, pros.,* v. *Collector of Ocean Township,* 10 *Id.* 75.

In respect to the road tax, I see no force in the objection to it. By section 3 of the act of 1885 (*Rev. Sup., p.* 50), a road tax is authorized to be collected as other borough taxes. It was properly assessed by the borough assessor, and is collectible by the borough collector. The provisions of those acts already mentioned, providing for the election of these borough officers, necessarily exclude the levying and collection of any road tax within the borough by the township officers.

Nor do I see any force in the contention, that the taxes levied are in excess of the sum ordered to be raised. An incorrect percentage was at first fixed as the rate of taxation, but this was subsequently revised. Some of the tax bills contained upon their face the inaccurate percentage, but the amount of the bill, as carried out, showed that it had been computed upon a correct rating.

In respect to the point taken, that the sum of $500 was paid to the borough collector arising from license fees, and therefore the amount which was raised by general taxation should have been that much less, there is one complete answer. The license fees then belonged to the township, and not to the borough. *Cozzens* v. *Slack,* 23 *Vroom* 113.

Concerning the poll tax, it is expressly authorized by the Borough act. *Rev. Sup., p.* 62, §§ 97, 98.

I have examined the other objections, but fail to find any which require special remark.

I think the assessment should not be disturbed.