[Civ. No. 18218.   Second Dist., Div. One.   Feb. 5, 1951.]

JAMES T. POTTER et al., Petitioners, v. CITY COUNCIL OF THE CITY OF PORT HUENEME et al., Respondents.

Warner & Jackson for Petitioners.

Jerome H. Berenson for Respondents.

DORAN, J.—The petition herein sets forth that the respondent city of Port Hueneme in Ventura County, "is adjacent and west of the city of Oxnard, and adjoins the military reservation and installations of the United States Navy and . . . Coast Guard on its north and west boundaries"; that the Coast Guard has owned and operated said reservation of 43 acres for over 50 years, "at which time exclusive federal jurisdiction was ceded by the State of California to said area"; that prior to 1943, the United States Navy acquired 1,577 acres of land in said area, and developed various naval installations known as Port Hueneme, to which parcel California likewise ceded "exclusive territorial jurisdiction."

It is further stated that previous to November, 1939, some 250 acres of said 1,577 acre parcel were then a part of the city of Oxnard, and that on September 26, 1939, a petition was signed by 77 citizens of the Port Hueneme area, including respondents Bert N. Dahl, mayor, and Oran W. Brown, past mayor and present member of the Port Hueneme city council, and filed with the city of Oxnard, representing that "if said harbor area were excluded from the City of Oxnard for the purpose of including the said harbor area within the Oxnard Harbor District, that the . . . 77 signers would oppose any attempt by any municipality to annex said harbor area for twenty-five (25) years thereafter"; that "acting upon said solemn written pledged word . . . the City of Oxnard did exclude said harbor area from the City of Oxnard," and that the United States "in reliance upon said status, accepted exclusive jurisdiction over said lands," and expended in excess of $38,000,000 in developing such harbor.

Petitioners further allege that on March 30, 1949, the respondent Port Hueneme city council "commenced formal consideration of a proposed ordinance to annex the said naval reservation and . . . coast guard reservation into the newly incorporated City of Port Hueneme, pursuant to Section 6, Act 5162, Deering's General Laws of the State of California, on the assertion that said reservations were uninhabited areas," which ordinance was protested by the Navy, Coast Guard, and others. The original ordinance was then abandoned, and a resolution adopted declaring an intention to annex said reservations "together with a sixty (60) foot strip of territory owned by the Berylwood Investment Company, consisting of 7.32 acres, adjacent to the western boundary of said naval reservation." It is alleged that said 60-foot strip was included "as a subterfuge for the purpose of avoiding the

legal objections and protests" made by the Navy, Coast Guard and others. The petition then avers that the proposed amended annexation just mentioned was likewise protested; that such protests were denied by the city council and a second reading of the ordinance set for November 1, 1950; that unless restrained the council would adopt said ordinance. An alternative writ of mandate was issued.

It is claimed by petitioners that adoption of such an ordinance would be illegal and in violation of the federal and state Constitutions; that it would conflict with "the exclusive grant of jurisdiction" ceded to the Navy and Coast Guard by conferring control of the harbor to the city of Port Hueneme "in regard to merchant shipping, and civilian use." It is likewise contended that said ordinance would subject "commercial ships and supplies entering said harbor to taxation, civilian labor regulations and other police power" of said city. Other claims made are that the ordinance subjects "civilian employees of the Naval Station . . . to a (city) payroll tax" and perhaps other local taxes; that it "depreciates the commercial value of the Naval and Coast Guard reservations; that it "interferes with the civilian employment" by the Navy by subjecting personnel to tax and police powers of the city. It is also insisted that such ordinance would subject the Navy and Coast Guard "to the burdensome responsibility of enforcing" city ordinances. The statement is made, however, that these contentions are in part based upon "potential ordinances that the city of Port Hueneme would be empowered to legislate in the event" the ordinance were adopted.

The claim is also made that the ordinance would be illegal and in violation of section 5005, California Harbor and Navigation Code, prohibiting inclusion of lands located in a harbor district; that the inclusion of the 60-foot strip heretofore mentioned and the omission of a 62-acre portion of the naval station were for the purpose of circumventing the law and "to develop said plan for annexation" by "gerrymandering." By the present mandate proceeding petitioners seek to prevent the adoption of the annexation ordinance.

The basic question is stated to be "whether or not, a city may annex federal military reservations against the will of the national government, pursuant to the uninhabited area annexation provisions of Sections 35,300 to 35,325 California Government Code." Cited in support of this proposition is

*American Distilling Co.* v. *City Council of Sausalito,* (1950) 34 Cal.2d 660 [213 P.2d 704].''

Respondents have filed a demurrer alleging that the petition is uncertain in respect to the claimed invalidity of the proposed ordinance, and contend that the named petitioners having no other interest than as taxpayers and citizens, have not sufficient beneficial interest to maintain this proceeding. By answer respondents deny the material allegations of the petition and assert that there is no showing of illegality in the proposed ordinance.

Attention is called to the fact that on June 7, 1950, petitioners filed a similar petition for mandamus in the Superior Court of Ventura County; that on October 20, 1950, the alternative writ was quashed, respondents' demurrer sustained and petitioners given 10 days to file an amended petition; that no amended petition was filed, but that the present proceeding was then instituted in the District Court of Appeal.

As noted in respondents' brief, the rule as set forth in 16 California Jurisprudence, section 6, page 767, requires that ''to authorize the issuance of the writ (of mandamus) there should not only be want of specific legal remedy, but also there should be a specific legal right; the party sought to be coerced must be bound to act. If the existence of the right is doubtful, the writ will be denied.'' On page 853 of the same citation occurs the following: ''It is a settled general rule that a private individual may apply for this remedy only in those cases where he has some private or particular interest to be subserved, or some particular right to be preserved or protected by the writ, independent of that which he holds with the public at large.'' Unless this special right is made to appear, the application should be denied.

The above rule finds application in the recent case of *American Distilling Co.* v. *City Council of Sausalito,* 34 Cal. 2d 660 [213 P.2d 704], cited by both parties hereto, where the court says: ''A sufficient showing of beneficial interest and of damage which might ensue . . . was disclosed when it appeared that the petitioner was the owner of the property proposed to be annexed illegally.'' It is to be noted that no such showing has been made in the instant case. Indeed, petitioners' most serious concern would seem to be that by enactment of the proposed ordinance, the supremacy and exclusive jurisdiction of the United States might be unduly interfered with,

Petitioner James T. Potter is merely alleged to be "a land owner, taxpayer and elector of said County of Ventura"; petitioner A. A. Ranni "is a land owner, taxpayer and elector of said City of Port Hueneme." It is alleged that "Oxnard Harbor District has a substantial outstanding bonded indebtedness, approximating which bonded indebtedness upon the lands of petitioners . . .; that the United States Navy leases Pier No. 1 to Oxnard Harbor District, and from the revenue thus derived, retiring said bonds together with the money received from the United States Navy; that by reason thereof, petitioners have a beneficial interest in said annexation and the continued harmonious relations between the United States Navy and the Oxnard Harbor District and Ventura County."

It is suggested in respondents' brief that although the petition shows no well defined legal or special interest, petitioners' theory may be that the question involved "is one of public right and the object of mandamus is to procure the enforcement of a public duty" in which case petitioners might be deemed sufficiently interested as citizens and taxpayers. That this modification of the general rule is applicable in certain cases cannot be doubted. However, as pointed out by respondents, such modification, permitting petitioners to act in a representative capacity, apparently "applies only in cases where a power or duty is imposed by law or statute upon a public board or officer and it or he refuses to carry it out."

In the instant case petitioners are attempting to challenge the validity of a legislative act rather than seeking to enforce a definite public duty enjoined by law. In such a situation it was certainly petitioners' duty to make a clear showing that respondents either acted without power or failed to obey statutory provisions relating to annexation. Unless there be such a showing, there should be no judicial interference with legislative process. Whether the legislation is wise or unwise is, of course, not a matter for discussion.

The *American Distilling Co.* v. *City Council of Sausalito*, 34 Cal.2d 660 [213 P.2d 704], previously mentioned, involved the same Annexation Act here under consideration, found in 2 Deering's General Laws, Act 5162, and as said in that case, "the statute constituted the measure of the power to be exercised by the city council." That act makes no distinction between publicly and privately owned land; it is therefore obviously beyond the jurisdiction of a judicial body to read

into such act by construction or otherwise, any such distinction.

The allegations of the petition that the proposed enactment will interfere with federal control are but conclusions of a speculative nature. Although petitioners' concern in behalf of the federal government and its naval and coast guard forces is commendable, such allegations in the present proceeding and in the absence of a more specific factual showing add nothing to the legal force of the petition. The same may be said in respect to the assertions that a certain 60-foot strip was fraudulently included in the annexation proceedings as a ''subterfuge'' to bring the matter within the law, which at most amount to mere conclusion.

Much of the petition relates to matters of speculative nature and remote possibilities which can hardly furnish authority for judicial interference by way of mandate. Petitioners' alleged ''beneficial interest'' is at best of a general nature in no manner comparable with that which existed in the American Distilling Company case relied upon. In short, petitioners, seeking this writ, which is by no means a matter of right, have fallen far short of presenting such a definite state of affairs as would justify the relief sought. It is fundamental that where the existence of the right is doubtful, the writ will be denied.

The alternative writ of mandate is discharged, the proceeding dismissed and the peremptory writ prayed for is denied.

White, P. J., and Drapeau, J., concurred.

Opinion was modified and a petition for a rehearing was denied February 26, 1951. Petitioners' application for a hearing by the Supreme Court was denied April 2, 1951.