[L. A. No. 24796. In Bank. Oct. 24, 1958.]

THE PEOPLE ex rel. JOHN AVERNA et al., Appellant, v.
CITY OF PALM SPRINGS, Respondent.

Edmund G. Brown, Attorney General, Eugene B. Jacobs and Delbert E. Wong, Deputy Attorneys General, Joseph A. Lazaroni and E. W. Cunningham for Appellant.

Jerome J. Bunker, City Attorney, for Respondent.

SPENCE, J.—This is a proceeding in quo warranto to test the validity of the annexation of certain "uninhabited" territory to the city of Palm Springs. Plaintiff's complaint, which charged the invalidity both generally and specifically, was found insufficient by the trial court and judgment was entered in favor of defendant after a demurrer was sustained without leave to amend.

Quo warranto lies to attack a completed annexation proceeding. (*American Distilling Co.* v. *City Council, Sausalito,* 34 Cal.2d 660, 667 [213 P.2d 704, 18 A.L.R.2d 1247].) Under existing law, the complaint is held sufficient if it charges the usurpation of the franchise in general terms. (*People* v. *City of Los Angeles,* 133 Cal. 338, 340-341 [65 P. 749].) But if the pleader sets out the specific facts relied on to show the usurpation, he assumes the burden of allegation and proof, and the complaint is subject to general demurrer if those facts do not state a cause of action. (*People* v. *City of Los Angeles, supra,* 133 Cal. 338, 341.) The attorney-general has urged that we revise the existing rules and require specific allegations in all cases where the action is brought on relation of private parties. We have determined, however, that this request should more properly be addressed to the Legislature, and that the rules heretofore established should govern these proceedings. And since plaintiff does not contend that any additional grounds are available to challenge this annexation, we have concluded that the trial court did not err in denying leave to amend, and that plaintiff's cause must stand or fall on the basis of the specific grounds alleged.

The annexation was conducted pursuant to the "Annexation of Uninhabited Territory Act of 1939." (Stats. 1939, ch. 297, p. 1567; now Gov. Code, §§ 35300-35326.) That act permits a city to annex "contiguous uninhabited territory"

(Gov. Code, § 35302) in proceedings initiated by resolution of the city's legislative body. (Gov. Code, § 35310.) The resolution must state the legislative body's reasons for desiring annexation (Gov. Code, § 35310), describe the boundaries of the territory to be annexed, designate it by an appropriate name, and contain notice of the time and place the legislative body will hear protests against the annexation. (Gov. Code, § 35306.) Copies of the resolution must be published twice in both city and county newspapers of general circulation, and written notice is to be mailed to each landowner in the territory at least twenty days before the first public hearing. (Gov. Code, § 35311.)

Any owner of property within the territory may file written protest at any time before the hour set for hearing objections (Gov. Code, § 35312), and the legislative body must hear and pass upon all protests so made. (Gov. Code, § 35313.) If the owners of one-half of the value of the territory protest, further proceedings shall not be taken. (Gov. Code, § 35313.) But if sufficient valid protests are not made, the legislative body must approve or disapprove the annexation, by ordinance. (Gov. Code, § 35314.) The annexation is complete when a certified copy of the ordinance is transmitted to the secretary of state and filed by him. (Gov. Code, §§ 35316, 35318.)

Plaintiff commenced this action after the annexation proceedings had been completed. The complaint alleged that the annexation was void because (1) written notice of the annexation proceedings was not given to one owner of land within the territory; (2) the notice and hearing given the other landowners did not satisfy the statutory requirements; (3) protests submitted to the city council deprived it of jurisdiction to annex the territory; and because (4) the annexation is unreasonable; (5) amounts to a fraudulent abuse of the statute; and (6) operates to take property without due process of law.

■ First: *Plaintiff alleges that the Southern Pacific Company, an owner of land in the territory, was not served with written notice of its opportunity to protest the annexation, and contends that this omission deprived the city council of jurisdiction to annex the territory.* As previously noted, the statute requires that notice be given by publication and by mail. (Gov. Code, § 35311.) Plaintiff does not allege that the city failed to mail written notice to all other landowners in the annexed territory nor does plaintiff allege that the

statutory requirements as to publication of notice were not observed. Under these circumstances, the failure to allege that the Southern Pacific Company did not acquire knowledge of the contents of the published notice, that it did not appear at the hearing, that it desired to protest, or that its protest, if any, was not in fact considered, renders this claim fatally deficient. (See *De Luca* v. *Board of Supervisors,* 134 Cal.App.2d 606, 609-611 [286 P.2d 395].) If it may be said that the language found in *In re Central Irrigation District,* 117 Cal. 382 [49 P. 354], carries any implication to the contrary, we do not deem it applicable to the situation here. In that case the statute provided for but one form of notice, which was notice by publication, and the published notice was held to be fatally defective. Here there was merely a failure to give notice to a single landowner by one of two specified methods. Furthermore, it should be noted that the decision in the Central Irrigation District case has been strictly limited in its application to its precise facts. (See *People* v. *City of Montebello,* 192 Cal. 489, 493 [221 P. 207].)

█ Second: *Plaintiff claims that none of the landowners were afforded the kind of notice or right of hearing required by the act.* This contention is based on the city's refusal to entertain either oral protests or written protests not tendered until after the hearing had commenced. Since the notice of hearing specified that the council would hear and determine ''all written protests filed with the City Council prior to the hour'' set for hearing, no complaint can be made of its adequacy if the city was justified in rejecting all protests not submitted in the form and at the time specified.

█ The statutory language is clear. Section 35312 of the Government Code provides: ''At any time *before* the hour set for hearing objections, any owner of property within the territory may file *written* protest. . . .'' (Emphasis added.) Plaintiff seeks to give a permissive reading to this section, relying on the word ''may.'' But the section means exactly what it says—only written protests filed before the hour set for hearing need be considered. The section is permissive only to the extent that no one is required to file a protest. Any other construction would render meaningless the limiting words in the next succeeding section, which requires ''the legislative body . . . [to] hear and pass upon all protests *so* made.'' (Emphasis added; Gov. Code, § 35313.) The language in *Foth* v. *City of Long Beach,* 125 Cal.App.2d 520, 528 [270 P.2d 868], is not inconsistent with this position,

since the issue in that case was whether certain protests had been prematurely signed.

Third: *Plaintiff asserts that even without the oral and tardy written protests, there were sufficient valid protests to bar further proceedings.* At the time of the hearing, the applicable code section provided in part: "If protest is made by the owners of one-half of the *value of the territory* as shown by the last equalized assessment roll, or if protest is made by public and private owners equal to one-half of the *value of the territory* proposed to be annexed as determined by the legislative body, further proceedings shall not be taken." (Emphasis added; Gov. Code, § 35313.) In 1955, after this annexation was completed, the Legislature amended this section by adding, "As used in this article, 'value of the territory' means the value of the land and improvements thereon." (Stats. 1955, ch. 1948, § 5, p. 3580.)

Plaintiff contends that the city erred in its determination that written protests filed prior to the hearing represented less than "one-half of the value of the territory." Plaintiff concedes that the city's determination was correct if the city was entitled to consider the value of both land and improvements in determining the sufficiency of protests. But plaintiff contends that before the 1955 amendment, "value of the territory" meant value of the land exclusive of improvements, and that this definition must govern these proceedings.

Plaintiff points to section 35305 of the Government Code as an indication that land values only are to be considered. That section provides: "Upon receiving a written petition requesting annexation . . . signed by the owners of not less than one-fourth of the land in the territory by area, and by assessed value . . . , the legislative body shall, without delay, pass a resolution giving notice of the proposed annexation."

The section does not support plaintiff's position. "Land" means "the solid material of the earth" (Civ. Code, § 659), and its value does not include the value of improvements thereon. (See *Krouser* v. *County of San Bernardino,* 29 Cal. 2d 766 [178 P.2d 441].) "Value of the territory" has not been so interpreted. (See *American Distilling Co.* v. *City Council, Sausalito, supra,* 34 Cal.2d 660, 665 [213 P.2d 704, 18 A.L.R. 2d 1247].)

Both section 35305 and section 35313 were first enacted as part of the "Annexation of Uninhabited Territory Act of 1939" (Stats. 1939, ch. 297, §§ 3, 6, p. 1568) and were added

to the Government Code with only minor changes in 1949. (Stats. 1949, ch. 79, pp. 125-126.) ▉ Since the Legislature has consistently required the petitions to be signed by owners of not less than one-fourth of the "land . . . by assessed value" (Gov. Code, § 35305), and has at the same time required that annexation proceedings be terminated if protest is made by owners of one-half of the "value of the territory as shown by the last equalized assessment roll" (Gov. Code, § 35313), it does not appear that the two tests were intended to be equivalents. We therefore conclude that the 1955 amendment was merely declaratory of existing law, and that the city council did not err in making its determination on the basis of the value of both land and improvements.

▉ Fourth: *Plaintiff contends that the annexation is void because it is unreasonable.* Plaintiff admits that the annexation violates no express statutory limitation restricting the shape, extent or character that annexed territory may take. But the annexation is said to be void because it is unreasonable in several particulars. In this regard it is alleged that the topography of the annexed land makes it impossible of urban development, that its size is out of all proportion to the city's needs, that part of the territory is included in a national forest, and that the land will not benefit by inclusion within the city.

A mere citation of the many cases stating that the wisdom or expediency of particular annexations is not a judicial question (*People v. City of Riverside,* 70 Cal. 461, 463 [9 P. 662, 11 P. 759]; *Johnson v. City of San Pablo,* 132 Cal.App.2d 447, 457 [283 P.2d 57]; *People v. Town of Corte Madera,* 115 Cal.App.2d 32, 47 [251 P.2d 988]; *City of Burlingame v. County of San Mateo,* 90 Cal.App.2d 705, 711 [203 P.2d 807]); that the courts can go no further than to see that the existing law is observed (*People v. City of Riverside, supra; Rafferty v. City of Covina,* 133 Cal.App.2d 745, 753 [285 P.2d 94]; *Johnson v. City of San Pablo, supra; People v. Town of Corte Madera, supra; Potter v. City Council,* 102 Cal.App. 2d 141, 145-146 [227 P.2d 25]; *City of Burlingame v. County of San Mateo, supra*); and that, subject only to express statutory limitations, the permissible shape, character or extent of the territory annexed is a political question (*People v. City of Los Angeles,* 154 Cal. 220, 224-225 [97 P. 311]; *People v. Town of Corte Madera, supra,* at pp. 46-47; see also *Rogers v. Board of Directors of Pasadena,* 218 Cal. 221, 223 [22 P.2d 509]; *People v. Town of Loyalton,* 147 Cal. 774, 777-778 [82

P. 620]), is sufficient to show that plaintiff's position has no support in the law of this state.

Moreover, the Legislature, not unmindful of the peculiar annexations attempted by some cities (e.g., *City of Burlingame* v. *County of San Mateo, supra,* 90 Cal.App.2d 705 [a horseshoe shaped territory 100 feet wide, 14,950 feet long, and enclosing 730 acres of unincorporated territory]), has made no attempt to state a general rule governing the shape, character or extent of territory that may be annexed; rather, its efforts have been confined to curbing particular abuses of the annexation acts. (See, e.g., Gov. Code, §§ 35002.5, 35326.) By this treatment of the problem, the Legislature has manifested an intent that the courts should continue to treat these questions as political in nature, and that an annexation should not be declared invalid unless some express statutory provision has been violated. It follows that plaintiff's attempt to establish this annexation as unreasonable does not state a cause of action.

■ Fifth: *Plaintiff claims that the annexation is void as a fraudulent abuse of the authority conferred by statute.* It has been indicated that the courts have, and in appropriate cases will exercise, the power to set aside a purported annexation where there has been a fraudulent abuse of the statute. (*City of Anaheim* v. *City of Fullerton,* 102 Cal.App. 2d 395 [227 P.2d 494]; *People* v. *City of Monterey Park,* 40 Cal.App. 715 [181 P. 825]. See also *Rogers* v. *Board of Directors of Pasadena, supra,* 218 Cal. 221, 223; *People* v. *City of Los Angeles, supra,* 154 Cal. 220, 224; *Johnson* v. *City of San Pablo, supra,* 132 Cal.App.2d 447, 456-457; *People* v. *Town of Corte Madera, supra,* 115 Cal.App.2d 32, 44.)

But plaintiff's complaint does not present such a case. The allegation of fraudulent abuse is based in large part on the identical facts used as a predicate for the charge of unreasonableness. Since there was no violation or evasion of any statutory provision relating to the determination of the land to be annexed, plaintiff's allegations in that regard do not establish a fraudulent abuse of the statute. The assertion that the city council assigned a false reason for annexing the territory and the indefinite allegation that the real reason was to subject the land to municipal taxes are conclusionary and, in any event, add nothing to the complaint. ■ The motives of the city council cannot be inquired into so long as it proceeded according to established law. (*Johnson* v.

*City of San Pablo, supra,* 132 Cal.App.2d 447, 457; *People* v. *Town of Corte Madera, supra,* 115 Cal.App.2d 32, 47; *City of Burlingame* v. *County of San Mateo, supra,* 90 Cal.App.2d 705, 711.)

 Sixth: *Plaintiff contends that the annexation will operate to take property without due process of law.* There is no merit in this contention. No one has a vested right to be either included or excluded from a local governmental unit (*Peart* v. *Board of Supervisors,* 145 Cal.App.2d 8, 11 [301 P.2d 874]), and the fixing of territorial boundaries of a municipal corporation will not ordinarily constitute an invasion of federal constitutional rights. (*Hunter* v. *City of Pittsburgh,* 207 U. S. 161, 178-179 [28 S.Ct. 40, 52 L.Ed. 151]; *Forsyth* v. *Hammond,* 166 U.S. 506, 518 [17 S.Ct. 665, 41 L.Ed. 1095]; *Kelly* v. *City of Pittsburgh,* 104 U. S. 78, 80-81 [26 L.Ed. 658].)

But plaintiff contends that neither the land nor its owners will be benefited "by inclusion within . . . the city" nor will the land or landowners receive "any of the benefits customarily resulting to property and property owners" within a municipality; and that the burden of municipal taxes, which is certain to follow the annexation, will amount to a taking of property without due process of law. Plaintiff relies on *Myles Salt Co.* v. *Iberia Drainage Dist.,* 239 U.S. 478 [36 S.Ct. 204, 60 L.Ed. 392]. In that case the plaintiff challenged the validity of a tax imposed by a special taxing district to finance the construction and maintenance of a drainage system. It was held that plaintiff's land could not be taxed since it would not be benefited by the proposed improvements.

 That case is readily distinguishable and the rule enunciated is not applicable here. (*Morton Salt Co.* v. *City of South Hutchinson,* 177 F.2d 889, 891-892; *State* ex rel. *Pan American Production Co.* v. *Texas City,* —— Tex. —— [303 S.W.2d 780, 783], appeal dismissed per curiam, 355 U.S. 603 [78 S.Ct. 533, 2 L.Ed.2d 523].) Special taxing districts can confer but one readily ascertainable benefit peculiarly advantageous to the property within the district and if it does not accrue to particular land, an assessment of that land to finance the improvements amounts to a taking of property without due process of law. But the rule is otherwise with respect to municipal corporations whose advantages are general and varied, including "the legally presumed intangible benefits resulting from the privilege of being part of an organ-

ized community." (*Morton Salt Co.* v. *City of South Hutchinson, supra,* 177 F.2d at p. 889.)

Since the burden which plaintiff anticipates is that of a general ad valorem property tax imposed to support the local government, it is not necessary that any special benefit accrue to the land by reason of the annexation. (*City of Santa Rosa* v. *Coulter,* 58 Cal. 537; see also *Town of Dixon* v. *Mayes,* 72 Cal. 166, 168 [13 P. 471].) The validity of such a tax does not depend on the receipt of some special benefit as distinguished from the general benefit to the community. (*Memphis & Charleston Ry. Co.* v. *Pace,* 282 U.S. 241, 246, 249 [51 S.Ct. 108, 75 L.Ed. 315, 72 A.L.R. 1096]; *St. Louis & S. W. Ry. Co.* v. *Nattin,* 277 U.S. 157, 159 [48 S.Ct. 438, 72 L.Ed. 830]; *Morton Salt Co.* v. *City of South Hutchinson, supra,* 177 F.2d 889, 891-892.) "[I]t is constitutionally sufficient if the taxes are uniform and are for public purposes in which the whole city has an interest." (*Morton Salt Co.* v. *City of South Hutchinson, supra,* 177 F.2d 889, 891.) Thus the performance of such ordinary municipal services as police and fire protection within the existing boundaries of the city (see *Kelly* v. *City of Pittsburgh, supra,* 104 U.S. 78, 82) together with the prospect that the city, consistent with its own interests and declared intent, will extend those services to the annexed territory, will justify the imposition of taxes and will be sufficient to satisfy the due process clauses of the state (*Anaheim Sugar Co.* v. *County of Orange,* 181 Cal. 212, 217 [183 P. 809]; *City of Santa Rosa* v. *Coulter,* 58 Cal. 537) and federal constitutions. (*Kelly* v. *City of Pittsburgh, supra,* 104 U.S. 78, 82; *Anaheim Sugar Co.* v. *County of Orange, supra*; see also *Bailey* v. *Collector of Manasquan,* 53 N.J.L. 162, 163-166 [20 A. 772].)

Since plaintiff's specific allegations do not establish the invalidity of the annexation, it is unnecessary to consider the effect of the "First Validating Act of 1955" (Stats. 1955, ch. 11, p. 454) which purported to validate "all acts and proceedings heretofore taken by any public body under any law, or under color of any law, for the annexation or inclusion of territory into any such public body. . . ." (Stats. 1955, ch. 11, § 4, p. 456.)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., and McComb, J., concurred.

CARTER, J.—I dissent.

The purported annexation violates accepted concepts of due process of law. The pivotal inequity is this: The Palm Springs City Council has used power delegated to it by the Legislature to engorge territory to which it is not politically responsible, which will not benefit from inclusion in the city, and which will thereafter be subject to taxation and policing by the city. The electors of Palm Springs choose the council. Therefore it is subject only to their control and need be loyal only to their interests to remain in office. The owners of proximate uninhabited lands may exert no control over the council before or after annexation. The city will benefit from taxes, expansion of police control and "bigness." The landowners will be subjected to taxes and city ordinances. The majority of this court holds no benefit need accrue to the landowners from this annexation and the complaint alleges none will. The conflict in interest is overt.

Justification of this annexation violates the axiom of Anglo-American jurisprudence that one may not be the judge of his own cause (Coke Upon Littleton, § 212; *Bonham's Case* [1610], 77 Eng. Rep. 646; *Dam* v. *Savadge* [1610], 80 Eng. Rep. 235; Cooley, Constitutional Limitations (2d ed.), 508; see n. 1) and is analogous to "taxation without representation."[1] Ordinances delegating power over an individual's property to neighboring property owners are unconstitutional because the power may be arbitrarily used and because of possible conflicting interests. (*Seattle Title Trust Co.* v. *Roberge*, 278 U.S. 116 [49 S.Ct. 50, 73 L.Ed. 210]; *Eubank* v. *City of Richmond*, 226 U.S. 137 [33 S.Ct. 76, 57 L.Ed. 156, 42 L.R.A.N.S. 1123].) Similar California statutes are saved because the courts will interpret laws to conform to constitutional safeguards against arbitrariness and compel administrative officers to act accordingly (*New York* ex rel. *Lieberman* v. *Van de Carr*, 199 U. S. 552 [26 S. Ct. 144, 50 L.Ed. 305]; *Butterworth* v. *Boyd*, 12 Cal.2d 140, 149 [82 P.2d 434, 126 A.L.R. 838]; *People* v. *Globe Grain & Mill. Co.*, 211 Cal. 121, 128 [294 P. 3]; *Gaylord* v. *City of Pasadena,*

---

[1]The sole means of preventing an annexation is notice to the interested landowners and their written protest. The protections of an election are not provided, although they are provided where inhabited territory is sought to be annexed. (Gov. Code, §§ 35100-35158.) In the instant case owners desiring to protest were denied that right by an ambiguous statute interpreted incorrectly against them.

175 Cal. 433, 437 [166 P. 348]). A city council may not exercise its discretion arbitrarily (*Roussey* v. *City of Burlingame*, 100 Cal.App.2d 321 [223 P.2d 517]) and courts review facts entering into a council's decision and overrule it if it is arbitrary. (*Bleuel* v. *City of Oakland*, 87 Cal.App. 594 [262 P. 477].) Because the Legislature's power to annex land to municipalities—ergo to tax and police—is delegated to a body with interests conflicting with those over whom the power may be used, the exercising body has a position of trust analogous to a fiduciary. The law demands the careful and fair use of such power. Yet this court again declares that only fraud suffices to nullify annexation proceedings. (See *People* v. *City of Los Angeles*, 154 Cal. 220, 224 [97 P. 311]; *People* v. *Town of Loyalton*, 147 Cal. 774, 778 [82 P. 620].)

The annexation also runs afoul of another constitutional rule: Where a state Legislature delegates power to form and define a special district, a hearing is required on the issue of whether or not particular land is benefited by inclusion. (*Chesebro* v. *Los Angeles County Flood Control Dist.*, 306 U. S. 459, 464 [59 S. Ct. 622, 83 L.Ed. 921]; *Browning* v. *Hooper*, 269 U. S. 396 [46 S. Ct. 141, 70 L.Ed. 330]; *Fallbrook Irr. Dist.* v. *Bradley*, 164 U. S. 112, 167 [17 S. Ct. 56, 41 L.Ed. 369]; *Miller & Lux* v. *Board of Supervisors*, 189 Cal. 254 [208 P. 304].) Land not benefited may not be included. (*Fallbrook Irr. Dist.* v. *Bradley, supra,* 172, 173.) It logically follows that a finding of benefit unsupported in fact is null, since the hearing would otherwise be a sham. This court holds the decision of the municipal body is not subject to judicial review. This holding is indefensible. In *Myles Salt Co.* v. *Iberia etc. Drainage Dist.*, 239 U. S. 478 [36 S. Ct. 204, 60 L.Ed. 392], the court reversed the sustaining of a demurrer to a suit to restrain tax sale of land. Petitioner's land had been included in a drainage district organized pursuant to Louisiana statutes by the police juries of the parishes concerned. Petitioner alleged his land did not benefit from operation of the district although he had to pay taxes to it. The trial court and the Louisiana Supreme Court held the inclusion was a legitimate exercise of discretionary legislative powers and the courts were not permitted to intervene in the absence of fraud—in effect, that it was a "political question." The Supreme Court held this was an act of confiscation and violative of the Fourteenth Amendment. At page 481 the court said the delegation of power to include the land in the district was valid but its use which is "palpably

arbitrary and a plain abuse'' is illegal. Therefore use of this power is not a political question and a state may not permit its arbitrary exercise. Although the instant case has not reached the point of a tax sale, the principle is applicable: The inclusion within an incorporated area of lands not thereby benefited is unconstitutional. I can see no difference between including land arbitrarily in a special district and in a municipality.

The instant case is stronger than the Myles Salt case because the political body enlarging itself is not politically responsible to the territory engorged. The drainage district in Myles Salt was organized by the police juries of the parishes in which the land in issue was situated.

It is important to observe that this case is before us on demurrer since the allegations of the complaint must be assumed true. The complaint alleges facts which bring it within the scope of the Myles Salt rule. It states that the area proposed to be annexed ''extends up and along the northern and northeastern slopes of Mount San Jacinto peak and varies in elevation from approximately 700 feet to 4,000 feet. With the exception of a few portions totaling an area of approximately one and a half square miles, the territory . . . consists entirely of precipitous gorges and gullies, high rocky ridges and steep rocky slopes, narrow canyons and sandy washes subject to flash floods. With the exception of approximately two miles of highway No. 111 . . . a short road of approximately two miles in length in Chino Canyon and one in Snow Creek Canyon, approximately one and a half miles long, there are no public roads or other means of access into the area. Up to approximately 80 per cent of the total area is inaccessible on foot without special mountain climbing equipment or without taking an extremely circuitous route. . . .

''That it is not true that there are indications that in the near future or any other time said territory sought to be annexed will be improved with buildings and other structures suitable for residential development or for commercial development to serve the alleged tramway development or any other development or purpose. . . . That an extension of fire and police or fire or police protection by defendant city to the territory proposed to be annexed is and will continue to be for all practical purposes impossible because of its great area and the character of the terrain, as herein above alleged and said territory will not benefit by any attempted extension of such protection by defendant. That at none of the times

herein mentioned has there been, nor is there now or in the foreseeable future any certainty or likelihood that said proposed tramway referred to in said ordinance would be or will be constructed. Even if constructed, any structure or structures used in connection therewith would occupy only an extremely small portion of Chino Canyon and would not be urban in character and would in no manner affect or alter the remaining portions of the territory sought to be annexed. . . .

"That defendant will not and cannot either now or in the foreseeable future extend to the property within the territory proposed to be annexed, except that adjacent to existing roads, any of the municipal services or advantages customarily supplies [sic] to property within the municipal boundries [sic] of incorporated towns and cities, nor will at any such times the property or the property owners within the territory . . . be in any manner benefited by inclusion within the boundries [sic] of defendant city. That defendant nevertheless proposes to subject all taxable property within said territory to taxation for municipal purposes. That the proposed annexation of said territory is unreasonable and unwarranted in that and for the reasons that said territory is unsuitable for and impossible of urban development and uses and is not authorized by the laws of the State of California relating to the annexation of uninhabited territory. That the proposed and attempted annexation of said territory by defendant under the provisions of such laws because of the facts herein alleged, operates as an attempted fraudulent use of such laws in view of the character of the terrain and extent of the area included within said proposed annexation. . . .

"That said proposed annexation is void for the reason that it would subject the property and property owners within the territory proposed to be annexed to taxation for municipal purposes without giving to such property and owners any of the benefits customarily resulting to property and property owners within the boundries [sic] of a municipal corporation and would therefore operate to take property of such owners without due process of law and without compensation. . . ."

This complaint alleges every fact held necessary for injunctive relief in *Myles Salt Co.* v. *Iberia etc. Drainage Dist.*, *supra*, at 484. Conclusions of fraud, no benefit to the land annexed (see the Myles Salt case, *supra*, at 484-485), and no sufficient reason for annexation are sustained by facts also

pleaded. The complaint could not be more concretely formed without pleading evidentiary facts.

These facts must be emphasized as they bring the instant case within the Myles Salt rule rather than that of *St. Louis & S. W. Ry. Co.* v. *Nattin*, 277 U.S. 157 [48 S.Ct. 438, 72 L.Ed. 830], cited by the majority. In the Nattin case, a bridge and a line of track owned by plaintiff railroad lay within a road district created by the parish police jury. The jury was politically responsible to the territory included within the road district. The railroad complained that it would derive no benefit from inclusion in the road district, and that construction of certain proposed roads would be competitively deleterious to it. However, there was no suggestion that the police jury gerrymandered the road district to include the railroad's property for taxation. It appears to have been included fortuitously. The same may be said of the area in issue in *State* ex rel. *Pan American Production Co.* v. *Texas City*, —— Tex. —— [303 S.W.2d 780], appeal dismissed 355 U.S. 603 [78 S.Ct. 533, 2 L.Ed.2d 523]. In fact, the railroad complains of a road which will parallel one of its lines, implying that that particular track was included simply because a road was to be built there. This factual context vindicates the rule that an ad valorem tax need not confer special benefits upon those paying it. To prorate taxes for road construction among taxpayers according to the benefits each derives is obviously impossible.[2]

These facts contrast with those in Myles Salt which also involved an ad valorem tax. The Myles Salt Company owned an island of 175 feet elevation surrounded by bayous. Across the bayous lay lowlands of 15 feet elevation. Drainage districts were needed in this part of Louisiana to remove waters from the lowlands into the bayous. However, the elevation of the company's island made erosion, not drainage, a serious problem. Inclusion of the island in the drainage district could not be defended on any practical ground. It was gerrymandered to provide a tax source. Another classic example is found in *Hines* v. *Clarendon Levee Dist.*, 264 F. 127.

In the instant case the complaint alleges the same type of gerrymandering as in the Myles Salt case. The need for fire, police and other municipal services in the territory proposed for annexation is about as beneficial as drainage in the Myles

---

[2] These facts are stated in *St. Louis & S. W. Ry. Co.* v. *Nattin*, 27 F.2d 766, which was the same case in a three-judge district court.

Island. That being included in a municipality is of itself a blessing is a gross fiction. School, police and other necessary public facilities are provided by the county in a manner better suited to solve the problems of rural society. To apply urban rules and techniques to rural problems is inane at best. The local political organization of such areas is provided by county governments.

The cases cited by the majority against petitioner's due process contention do not face the instant problem. Complainant's land in *Kelly* v. *City of Pittsburgh*, 104 U.S. 78 [26 L.Ed. 658], was placed within Pittsburgh by the state Legislature. (See *Kelly* v. *City of Pittsburgh*, 85 Pa. 170 [27 Am.Rep. 633].) This act was not challenged.

The same defect renders inapposite *City of Santa Rosa* v. *Coulter*, 58 Cal. 537,[3] *Town of Dixon* v. *Mayes*, 72 Cal. 166 [13 P. 471]; and *Memphis & Charleston Ry. Co.* v. *Pace*, 282 U.S. 241 [51 S.Ct. 108, 75 L.Ed. 315, 72 A.L.R. 1096]. *Morton Salt Co.* v. *City of South Hutchinson*, 177 F.2d 889, involved taxation of land which was already within the city when plaintiff's factory was built. There was no issue of annexation in the case.

*Forsyth* v. *Hammond*, 166 U.S. 506 [17 S.Ct. 665, 41 L.Ed. 1095], held (1) the federal courts had no power over the case because the same cause was pending in the state courts; and (2) the lower federal court had improperly undertaken to interpret state law to determine the case. Language at page 518 implies that constitutional rights may be infringed by a state's creation or alteration of municipal boundaries.

The plaintiff in *Hunter* v. *City of Pittsburgh*, 207 U.S. 161 [28 S.Ct. 40, 52 L.Ed. 151], merely attacked the state statute delegating power to the electorate of one city to in effect ingest another. The court rejected this. The importance of this distinction is clear upon comparing this case with the Myles Salt case at pages 484-485. The arbitrary *use* of the power was not attacked. Also (1) there were no facts showing the new municipality would not be of some benefit to complainants; (2) the facts indicated merely that plaintiffs would not benefit *proportionately*, but did not show they would not benefit *at all*; (3) the electors of the two communities voted for the unification. The issue of the validity of a state statute was before the United States Supreme Court in *State* ex rel. *Pan American Production Co.* v. *Texas City*, 355

---

[3]See Stats. 1875-76, ch. 108, p. 251, at 252.

U.S. 603 [78 S.Ct. 533, 2 L.Ed.2d 523]. The state *appealed* the decision of the Texas Supreme Court under U.S.C.A. title 28, section 1257(2). This raised the issue of the validity of the statute pursuant to which Texas City expanded itself. This placed the case under the aegis of *Hunter* v. *City of Pittsburgh, supra,*[4] since the validity of the statute was also there attacked. State *acts* pursuant to a valid statute may only be attacked by certiorari pursuant to U.S.C.A. title 28, section 1257, subdivision (3).[5] This distinction is noted in Myles Salt which states that such statutes themselves are valid although state action pursuant to them may be unconstitutional. The Texas City case is also different from the instant one in that it went to trial and judgment was entered against petitioners. (See *State* ex rel. *Pan American Production Co.* v. *Texas City* (Tex.Civ.App.), 295 S.W.2d 697, at 699.)

The question in *Anaheim Sugar Co.* v. *County of Orange,* 181 Cal. 212 [183 P. 809], concerned the *proportion* of benefits received, not the absence of benefits. The proceedings for the organization of a road district were held invalid in that case.

*Bailey* v. *Collector of Manasquan,* 53 N.J.L. 162 [20 A. 772], was decided in 1890, before the United States Supreme Court cases upon which this dissent rests, were decided. Although there may be no vested right to be excluded from a governmental unit (*Peart* v. *Board of Supervisors,* 145 Cal. App.2d 8, 11 [301 P.2d 874]) there is a right to due process in annexation proceedings.

The doctrine that the permissible shape, character or extent

---

[4]Although U.S.C.A. title 28, section 2103, provides that an appeal improvidently taken may be considered as a petition for certiorari, it must not be assumed that the attorneys for the State of Texas followed an incorrect procedural path of attack. Therefore it appears the statute itself was questioned.

[5]U.S.C.A. title 28, section 1257, provides in part:

''Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court as follows: . . .

'' (2) By appeal, where is drawn in question the validity of a statute of any state on the ground of its being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity.

'' (3) By writ of certiorari, where the validity of a treaty or statute of the United States is drawn in question or where the validity of a State statute is drawn in question on the ground of its being repugnant to the Constitution, treaties or laws of the United States, or where any title, right, privilege or immunity is specially set up or claimed under the Constitution, treaties or statutes of, or commission held or authority exercised under, the United States.''

of annexed territory is a political question arose in cases involving incorporation (*People* v. *Town of Loyalton, supra*) and annexation of inhabited areas. (*Rogers* v. *Board of Directors of Pasadena*, 218 Cal. 221 [22 P.2d 509]; *People* v. *City of Los Angeles, supra*.) Incorporation requires an election in which a majority of the electors in the area to be incorporated must vote for incorporation. For annexation of inhabited territory, a majority of electors of the municipality and a majority of those in the territory to be annexed must vote for annexation. To vitiate this, a court would have to contravene the will of an electorate. In characterizing the question "political," the court in *People* v. *City of Los Angeles, supra*, dwelt at length upon the role of the voters. The doctrine was improperly extended to annexations of uninhabited land, concerning which no election is held, in *City of Burlingame* v. *County of San Mateo*, 90 Cal.App.2d 705 [203 P.2d 807]. At pages 709-710 the court quoted *People* v. *City of Los Angeles, supra*, for this proposition. This court has interpreted article XI, section 6, of the California Constitution to require the Legislature to enact only general laws relating to municipal annexations. (*People* v. *Town of Ontario*, 148 Cal. 625, see p. 629 [84 P. 205].) The Legislature is naturally incapable of defining boundaries of particular cities by general laws. (Observed in *People* v. *Town of Ontario, supra*, at 629.) Therefore it enacted statutory schemes delegating to the legislative bodies of the municipalities the power to annex uninhabited lands. (Gov. Code, §§ 35000-35006; 35200-35213; 35300-35325.) This court hereby makes this power plenary and subject to abuse and arbitrary exercise without remedy to those wronged. The majority of states limit annexations to "reasonable" ones. (2 McQuillin, Municipal Corporations, 3d ed., p. 322.) California must concur or permit continued incursions on the right to private property of her citizens.

In summary:

(1) A municipal legislative body acts as an administrative body exercising powers delegated by the state Legislature when it annexes territory;

(2) It has a relationship of trust to owners of land proposed for annexation;

(3) These landowners are entitled to a hearing on the issue of benefit to their land by annexation and to a finding of benefit based upon facts;

(4) A court should overthrow the annexation if the finding of benefit is arbitrary or lacking in factual support;

(5) If these elements are not satisfied, the annexation is unconstitutional.

The majority has also interpreted an ambiguous statute against those protesting. Government Code, section 35312, provides:

"At any time before the hour set for hearing objections, any owner of property within the territory may file written protest against the annexation. The protest shall state the name of the owner of the property affected and the description and area of the property in general terms."

Section 35313 provides:

"At the time set for hearing protests the legislative body shall hear and pass upon all protests so made. If protest is made by the owners of one-half of the value of the territory as shown by the last equalized assessment roll, or if protest is made by public and private owners equal to one-half of the value of the territory proposed to be annexed as determined by the legislative body, further proceedings shall not be taken."

The majority holds that "protests so made" refers to protests made pursuant to section 35312. This construction is unnecessary and inconsonant with the aim of the sections. Section 35312 aims to provide a method of protest for landowners unable to attend a hearing. Note, that section says: "At any time before the hour set for hearing objections. . . ." This clearly contemplates a "hearing" of objections in addition to those written. Section 35313 says: "At the time set for *hearing* protests. . . ." If a protest is written it need not again be heard. This clearly provides for a different kind of protest. Further, if section 35313 is interpreted to mean a hearing is to be held on all written protests, it would require all property owners filing written protests pursuant to section 35312 to appear at the "hearing." Since many owners of uninhabited lands may reside miles away from their property, they could not personally appear and present their protests. "Protests so made" therefore refers to protests which are "heard." No reason of convenience appears why protests should not also be presented at the "time set for hearing protests."

The First Validating Act of 1955 (Stats. 1955, ch. 11, p. 454; effective January 28, 1955) purported to validate "[a]ll acts and proceedings heretofore taken by any public body

under any law, or under color of any law, for the annexation or inclusion of territory into any such public body. . . ." (§ 4.) Section 6(d) provides: "This act shall not operate to confirm, validate, or legalize any act, proceeding, or other matter the legality of which is being contested or inquired into in *any* legal proceeding now pending and undetermined or which may be pending and undetermined during the period of 30 days from and after the effective date of this act. . . ." (Emphasis added.)

Paragraph five of the amended complaint alleges that on November 5, 1954, the relators filed a complaint in quo warranto in the Superior Court of Riverside County challenging the proceedings to annex the territory here in question. Defendant's demurrer to this complaint acknowledges that this action was still pending on March 23, 1956. Since this action challenged the legality of the annexation proceedings and was pending at the time the First Validating Act became effective, the act does not cure any defects which may taint the proceedings.

A validating act is impotent to cure the jurisdictional defects alleged in the complaint: (1) The arbitrary finding that the territory in question would benefit by annexation; or (2) refusal to hear protests of landowners which were not made in writing before the time set for protests to be heard. (*Miller & Lux* v. *Board of Supervisors, supra.*)

For the foregoing reasons, I would reverse the judgment.

SCHAUER, J.—I concur generally in the view of the law as developed in Mr. Justice Carter's dissenting opinion and join in the conclusion that the judgment should be reversed.