[Civ. No. 23923.    Second Dist., Div. One.    Apr. 27, 1960.]

J. H. McMILLEN et al., Appellants, v. CITY OF EL MONTE
et al., Respondents.

Richards, Watson, Birnbaum & Smith and Richards, Watson, Smith & Hemmerling for Appellants.

James A. Nicklin, City Attorney, Burke, Williams & Sorensen and Royal M. Sorensen, for Respondents.

WOOD, P. J.—Plaintiffs sought a writ of mandate commanding defendants to terminate proceedings for the annexation of certain territory to the city of El Monte.  Plaintiffs appeal from a judgment denying the petition for the writ.

Appellants contend that the notice of the annexation proceedings did not satisfy statutory or constitutional requirements; and that protests made to the city council deprived it of jurisdiction to annex the territory.

On September 10, 1957, pursuant to the Annexation of Uninhabited Territory Act of 1939 (Gov. Code, §§ 35300-35326), the city council of El Monte adopted a resolution (No. 2059) whereby it instituted proceedings to annex uninhabited territory contiguous to the southeasterly boundary of that city.  The territory was designated in the resolution as "Annexation No. 135, Southeast El Monte Uninhabited." The real property in the territory was of the assessed value of $310,540.  Plaintiff J. H. McMillen was the owner of property therein of the assessed value of $250,470, and the other plaintiffs were owners of property of the assessed value of $34,500. On October 21, 1957, the city council rescinded Resolution Number 2059 and terminated the annexation proceedings. On the same day, the council adopted another resolution (No. 2071) whereby it started proceedings again to annex the same territory.  On November 26, 1957, the council rescinded Resolution Number 2071 and terminated the annexation proceedings.  On the same day, the council adopted a third resolution (No. 2085) whereby it started proceedings again to annex the same territory.  On December 30, 1957, the council rescinded the third resolution and terminated the annexation proceedings.  On the same day, the council adopted

a fourth resolution (No. 2102) whereby it started proceedings again to annex the same territory.

Section 5 of Resolution Number 2102 provided, in part: "That pursuant to the 'Annexation of Uninhabited Territory Act of 1939,' as amended, the City Council of the City of El Monte does hereby give notice of said proposed annexation . . . ." Section 6 of the resolution provided: "That the City of El Monte hereby gives notice of and fixes February 10, 1958, at the hour of 7:00 P.M., in the Council Chambers of the El Monte City Hall, 511 East Valley Boulevard, El Monte, California, as the day, hour and place when and where any person owning real property within such territory so proposed to be annexed and having any objection to the proposed annexation may appear before the City Council of the City of El Monte and show cause why such territory shall not be annexed."

Copies of Resolution Number 2102 were mailed to the persons to whom the land in the territory was assessed, and the resolution was duly published.

On February 10, 1958, at 7 p. m., the city council held a hearing on the proposed annexation. No written protest of the annexation was filed prior to that time. Plaintiffs Morgan and Snowden, and Mrs. McMillen as attorney in fact for plaintiff J. H. McMillen, appeared at the hearing and orally protested the annexation. Plaintiffs Morgan, Snowden, and McMillen were the owners of real property of the assessed valuation of $284,970, which was 87 per cent of the assessed value of all the real property in the territory.

As above shown, the assessed value of the McMillen property was in an amount that was far more than half the value of all the land in the territory, and therefore Mrs. McMillen, as attorney in fact for Mr. McMillen, could have prevented the annexation by making a proper protest. The city attorney, city administrator, and other city officials knew that she had that power. On various occasions prior to the time the city council adopted the first resolution for annexation (September 10, 1957), the city attorney and city administrator had requested her to file a petition for annexation. Her replies were to the effect that she thought it was not the right time and that she was opposed to the annexation. On one of those occasions the city attorney and city administrator went to the home of Mrs. McMillen at Wasco, in Kern County, and discussed the matter with her. On that occasion they were at her home for about four hours. They told her they would keep her apprised of all steps and proceedings. After the

council adopted the first resolution on September 10, 1957, the planning commission held a hearing for consideration of zoning in connection with the proposed annexation. Mrs. McMillen appeared at that hearing, where the city attorney and city administrator were present, and stated that she protested the annexation. Thereafter the council terminated that annexation proceeding which had been instituted by the first resolution. As above shown, three other annexation proceedings were commenced. After each of those proceedings (except the last one) had been pending about a month, it was rescinded and another proceeding of the same kind was commenced immediately. Such procedure was designed to retain jurisdiction so that another city could not start a proceeding to annex the same territory. During the pendency of those proceedings, Mrs. McMillen had conferences with the city attorney and city administrator relative to the proposed annexation, and she stated in effect that she opposed the annexation. Finally, after the third such proceeding had been terminated, the present (fourth) proceeding was commenced on December 30, 1957, and, as above stated, the notice of hearing stated that the city fixed February 10, 1958, at 7 p. m., in the council chambers, as the day, hour, and place for the hearing.

On January 17, 1958, the city attorney sent a letter to Mrs. McMillen wherein he stated, among other things, that in the past he had told her he would keep her apprised of all action by the city involving the McMillen property; the time had arrived when the annexation of the property must be processed; the City of Industry is processing a large annexation which comes dangerously close to the McMillen property; he (city attorney) would be disappointed to learn that in their dealings he had ever misled her or failed to tell her all the facts which she was entitled to know; if this annexation is defeated the city of El Monte could not annex any of the property for a year thereafter, and this would make the McMillen and other property prey for annexation by other cities and would permit other cities to absorb the property whether or not Mrs. McMillen objected. (Apparently in an annexation by another city the McMillen property would not exceed in value more than one-half the value of all the property involved.) He also said in the letter that no further notice is required to be given, and ''you are not required to sign any type of document whatsoever unless you wish to actively oppose the proceedings.''

When Mrs. McMillen, Mr. Morgan, and Mr. Snowden made their oral protests at the council meeting on February 10, 1958, no member of the council, nor any city official or anyone, advised the objectors that their protests, in order to be valid protests, should have been in writing and filed with the city clerk prior to 7 p. m. on said February 10. No city official or anyone advised the objectors at any time that protests, in order to be valid protests, must be in writing and filed with the city clerk prior to 7 p. m. on said February 10. After the oral protests had been made, the mayor requested the city administrator to tabulate the assessed value of the property of the objectors. The administrator reported that the assessed value of the property of the objectors was 50.012 per cent of the total assessed value of the property in the territory. According to the testimony of Mrs. McMillen, the administrator, in making the report, said: ''It appears as if we have lost it by $80.'' The report that the assessed value of the objectors' property was 50.012 per cent of the total value was erroneous—the report omitted the value of improvements on the land. The omission was made on the theory that the improvements were owned by the lessee. The report should have been that the oral protests represented 87 per cent of the total assessed value. After the report of the administrator had been made, a motion was made and carried that the hearing on annexation be closed. Then the persons who had made the oral protests left the council chambers and went to their homes. Thereafter and during said meeting of the council, the matter of the annexation was continued to February 17, 1958.

After the council had adjourned on February 10, the city administrator, with the assistance of the city attorney, prepared a letter that was signed by the administrator and was sent to Mrs. McMillen. That letter (dated February 11) stated, among other things, as follows: ''I was both disappointed and surprised to learn Monday night [February 10] that you were then opposed to the annexation. . . . As the matter now stands, no one has filed a valid written protest against the annexation, and at its next meeting . . . the Council will determine whether or not the welfare of the Community should be governed by the personal desires of the property owners who spoke at the hearing or whether it should proceed to annex the property for the reason that valid protests were not made and the long-range interests of the City and Community will be better served by its annexation. I am writing this to

you because I know that you left the meeting with the impression that you represented a majority of the assessed valuation involved and that the Council would not annex the property. . . . I have never knowingly misled you in the past and I might be criticized if I did not clearly state where the matter stands now in case you may have gotten the wrong impression. . . ."

Prior to the council meeting on February 17, the persons who made oral protests on February 10 filed written protests. At said meeting on February 17 the council disallowed the protests "for the reason that they do not constitute valid or legal protests, that the true owners of the majority of the land and improvements have made no protests whatsoever, written or oral, and that the interests of the City and community require the completion of this annexation." The council was in error in asserting that "the true owners of the land and improvements" had not made oral protests. At the trial it was established that the improvements were assessed to the owners of the land, and were not assessed to the lessees. At the hearing on February 17, the council introduced an ordinance for completion of the annexation, and the ordinance was adopted on March 3. The certifying of the ordinance to the Secretary of State has been stayed pending this mandamus action.

The land owners alleged in their petition herein that the actions of the defendants, with respect to not informing plaintiffs that protests must be in writing, were fraudulent and were for the purpose of deceiving plaintiffs, and that plaintiffs were deceived thereby, and as a result thereof they did not file written protests prior to the hearing on February 10.

The court found that Mrs. McMillen was not specifically informed prior to February 10, 1958, that protests must be in writing and filed with the city clerk prior to 7 p. m. on February 10 in order to be valid protests; that in September, 1957, the city attorney did inform Mrs. McMillen in general terms that the only way an annexation proceeding could be killed was by the filing of a written protest and that the filing of a majority written protest would terminate the proceedings. The court also found that the plaintiffs believed that they could appear at the February 10 meeting and make valid protests orally; that if plaintiffs had known that protests were required to be in writing and filed prior to 7 p. m. on February 10, they would have filed such written protests. The court also found that the actions of defendants were not fraudulent or for the purpose of deceiving plaintiffs; that

the city did not waive the requirement that protests be in writing and filed prior to the time of hearing on February 10; that the city or the council or its agents were not estopped to deny the validity of the oral protests.

Appellants argue to the effect that where the notice of hearing does not require protests to be in writing or to be filed prior to the hearing, and the notice expressly invites the owners to appear before the council and make their objections, and they do appear and make objections in accordance with the notice, the council must recognize the oral objections as valid protests.

Section 35312 of the Government Code provides: "At any time before the hour set for hearing objections, any owner of property within the territory may file written protest against the annexation. The protest shall state the name of the owner of the property affected and the description and area of the property in general terms. . . . Protests may be made on behalf of the owner by an agent."

Section 35313 of the Government Code provides: "At the time set for hearing protests, or to which the hearing may have been continued, the legislative body shall hear and pass upon all protests so made. If protest is made by the owners of one-half of the value of the territory as shown by the last equalized assessment roll, further proceedings shall not be taken. . . . As used in this article, 'value of the territory' means the value of the land and improvements thereon."

*People* v. *City of Palm Springs,* 51 Cal.2d 38 [331 P.2d 4], was a proceeding in quo warranto to test the validity of the annexation of uninhabited territory. In that case judgment was in favor of defendant after a demurrer to the complaint was sustained without leave to amend. It was contended therein that none of the landowners was afforded the kind of notice or right of hearing required by the annexation act. The court said therein (p. 43): "This contention is based on the city's refusal to entertain either oral protests or written protests not tendered until after the hearing had commenced. Since the notice of hearing specified that the council would hear and determine 'all written protests filed with the City Council prior to the hour' set for hearing, no complaint can be made of its adequacy if the city was justified in rejecting all protests not submitted in the form and at the time specified."

It was also said therein (p. 43): "The statutory language is clear. Section 35312 of the Government Code provides: 'At any time *before* the hour set for hearing objections, any

owner of property within the territory may file *written* protest. . . .' (Emphasis added.) Plaintiff seeks to give a permissive reading to this section, relying on the word 'may.' But the section means exactly what it says—only written protests filed before the hour set for hearing need be considered. The section is permissive only to the extent that no one is required to file a protest. Any other construction would render meaningless the limiting words in the next succeeding section, which requires 'the legislative body . . . [to] hear and pass upon all protests *so* made.' (Emphasis added; Gov. Code, § 35313.)''

It thus appears that the interpretation, in the Palm Springs case, of sections 35312 and 35313 is determinative of the question in the present case as to the form and time of making protests. In the present case, in order for the majority protests to be effective in compelling a termination of the annexation proceedings, the protests should have been in writing and filed with the city clerk before the hour set for hearing objections.

As above stated, the trial court found that the acts of the public officials, in connection with the protests, were not fraudulent; that the city had not waived the requirements that protests be in writing and filed prior to the time of hearing on February 10; and that the city was not estopped to deny the validity of the oral protests. Under the evidence herein, this court is bound by those findings.

Although the majority protests were not made in the manner which would require the council to terminate the annexation proceedings, the council had the right to consider the oral protests in determining whether the council, in the exercise of its discretion, should approve or disapprove the annexation. Section 35314 of the Government Code provides: "If such a protest [majority protest] is not made, the legislative body shall forthwith approve or disapprove the annexation, by ordinance.'' The trial court found that the council heard the oral protests for the purpose of obtaining information to assist it in the exercise of its discretion as to whether it would annex or not annex the territory.

In the present case there had been three previous abandonments of annexation proceedings without written protests having been made, and some public officials had had extended oral negotiations with Mrs. McMillen wherein she had indicated opposition to the annexation. Under the circumstances of this case it would seem that, when it appeared at the council

hearing that the protesting owners through inadvertence were not making valid protests, the members of the council or other public officials there present would then have informed the owners of their technical mistake. It is true, of course, that the officials were not legally required to do so.

Appellants also contend that the city council deprived them of vested property rights without due process of law. Their argument is that procedural due process of law requires adequate notice and an opportunity to be heard; that a mere notice of hearing is not sufficient, but the notice given must be such that it is "reasonably probable that the parties proceeded against will be apprised of what is going on and given an opportunity to defend." They argue further that if a property owner must protest in writing in order for his protest to be valid, procedural due process would seem to require that he be so notified; and that if the owner's right to protest will be forfeited if his protest is not in writing and filed before the hour set for the hearing, he should be so notified; that the notice herein was misleading in that it stated that any person might appear before the council and show cause against the annexation. Section 35306 of the Government Code provides: "The resolution [regarding annexation] shall describe the boundaries of the territory . . . and contain a notice of the time and place the legislative body will hear protests made by any person owning real property within the territory. . . ." Section 35311 of that code provides: "The city clerk . . . shall also cause written notice of such proposed annexation to be mailed to each person to whom land within the territory proposed to be annexed, is assessed . . . , at the address shown on said assessment roll. . . ." In the present case copies of the resolution involved here were mailed to the owners. The resolution (above quoted) contained a notice of the time and place that an owner might appear before the city council and show cause why the territory should not be annexed. There is no statutory requirement that the notice shall state the manner in which protests shall be made. The trial court found that the notice of the hearing, as given by the resolution, fairly apprised the owners of the proceedings to be held, and their rights thereunder, and that the notice was ample. There was evidence that in September, 1957, the city attorney informed Mrs. McMillen that the only way an annexation proceeding could be killed was by filing a written protest. Also the letter which the city attorney sent to her in January, 1958, stated that she was not required to sign any document unless she wished to actively

oppose the proceedings. ▮ In *People* v. *City of Palm Springs, supra,* 51 Cal.2d 38 [331 P.2d 4], it was said at page 47: "No one has a vested right to be either included or excluded from a local governmental unit. . . ." Under the circumstances here, appellant's contention regarding lack of due process of law is not sustainable.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 22, 1960. Schauer, J., and Peters, J., were of the opinion that the petition should be granted.