[Civ. No. 24552. Second Dist., Div. Three. Feb. 2, 1961.]

CITY OF EL MONTE et al., Appellants, v. CITY OF INDUSTRY et al., Respondents.

CITY OF INDUSTRY, Respondent, v. CITY OF EL MONTE et al., Appellants.

James A. Nicklin, City Attorney, Burke, Williams & Sorensen and Royal M. Sorensen for Appellants.

Robert G. Beverly, Edgar Paul Boyko and Richards, Watson, Smith & Hemmerling for Respondents.

FORD, J.—This appeal involves two separate matters which were consolidated for the purpose of trial. In each, a writ of mandate was sought to compel the termination of a certain annexation proceeding relating to uninhabited territory. (See Gov. Code, § 35303.) Land involved in each attempted annexation overlapped land included in the other. The pertinent facts were embodied in a written stipulation.

■ The annexation proceeding to be first discussed herein will be called El Monte Annexation 134. The City Council of El Monte instituted proceedings in September of 1957 for the annexation of certain territory. On March 9, 1959, an ordinance was adopted approving such annexation. However, the territory involved contained a strip of land, including a public street, which was over 300 feet long and less than 200 feet wide and which strip was the only connection between the city of El Monte and the rest of the territory embodied in the annexation; the strip and the balance of the territory were within 3 miles of the boundaries of the city of Industry. No problem with respect to the consent of property owners was involved. However, the city of Industry never gave its consent to such annexation. Pursuant to the attack by the city of Industry on the validity of such proceedings, the superior court determined that there had been no valid annexation. That such determination was correct is readily apparent from the language of sections 35302, 35002.5 and 35304.5 of the Government Code.[1] As stated in *American Distilling Co. v. City Council of Sausalito*, 34 Cal.2d 660, at page 664 [213 P.2d 704, 18 A.L.R.2d 1247], in such a proceeding the statute constitutes the measure of the power to be exercised by the city council.

■ The city of El Monte attempts to avoid such determination by recourse to the First Validating Act of 1959. (Stats. 1959, ch. 12, p. 1857.) But in section 6, subdivision (c) thereof it is stated that the provisions of the act "shall not operate to confirm, validate, or legalize any act, proceeding, or other matter the legality of which is being contested or inquired into in any legal proceeding now pending and undetermined or which may be pending or undetermined during the period

---

[1]Section 35302 is as follows: "The boundaries of a city may be altered and contiguous uninhabited territory annexed to, and incorporated within it, pursuant to this article."

Section 35002.5 (made applicable to such proceeding by § 35301) is in part as follows: "Territory shall not be deemed contiguous as the word 'contiguous' is used in this chapter if the only contiguity is based on a strip of land over 300 feet long and less than 200 feet wide, such width to be exclusive of highways."

Section 35304.5 is in part as follows: "Notwithstanding the provisions of Section 35002.5, territory consisting of property abutting on a street, highway, or road and such street, highway, or road to the extent that it abuts such property together with any street, highway, or road which connects such territory to the city may be annexed to a city pursuant to this article . . . provided, that if any portion of such territory or street, highway or road is situated within three miles of the boundaries of any other city the consent of the legislative body of such other city shall first be obtained."

of 30 days from and after the effective date of this act. . . ."
That act became effective March 13, 1959. The petition for a
writ of mandate to compel termination of such annexation
proceeding was filed in the superior court by the city of In-
dustry on April 6, 1959, on which date an alternative writ of
mandate issued.[2] Assuming that the annexation proceedings
were subject to legislative validation, the 1959 legislation can-
not aid the city of El Monte.

A more difficult problem is presented by the other
annexation proceeding herein involved which shall be desig-
nated Industry Annexation 36. On November 26, 1958, the
City Council of the City of Industry adopted a resolution
(No. 112) instituting proceedings for the annexation of cer-
tain uninhabited territory. Under that resolution, a hearing
was set for January 22, 1959, at 8 p. m. for the purpose of
hearing objections to the proposed annexation. Such resolu-
tion provided that any protest "must be in writing, [and]
may be filed at any time before the hour set for hearing objec-
tions to the proposed annexation . . . ."[3] Written objections
were signed by the owners of property having an assessed
value of 54.2 per cent of the total assessed value of the real
property involved in the proposed annexation. In the stipu-
lation of facts, it is stated that such written protests, "prior
to 8 :00 P. M., to wit, approximately 7 :53 P. M., on January
22, 1959, were placed on the Council table of said City Council
in front of the seat occupied by the Mayor of said city when
said Council was in session. That said exhibits were so placed
by Royal M. Sorensen, the attorney representing the signers
of said exhibits. . . . That . . . the City Council of the City
of Industry was not in session and no member thereof was
in the Council chamber." The stipulation also contains the
following statement as to what occurred on that occasion:
"That after 7 :20 P. M. and prior to 8 :00 P. M. on said date
efforts were made to file signed duplicate originals of [such
protests] . . . in the office of the City Clerk of the City of
Industry. That between the hours of 5 :00 P. M. and 8 :10
P. M. on January 22, 1959, the City Clerk's office was not

---

[2]The petition for writ of mandate with respect to Industry Annexation
36, which attempted annexation is hereafter discussed, was filed in the
superior court on March 23, 1959, on which date an alternative writ of
mandate issued.

[3]Section 35312 of the Government Code is in part as follows: "At any
time before the hour set for hearing objections, any owner of property
within the territory may file written protest against the annexation."

open and there was no City Clerk or deputy at said office or on the premises of the City Hall during such time. That during such time on said date, the City Manager's office was not open nor was the City Manager on said premises. That between the hours of 7:30 P. M. and 8:00 P. M. on said date, attempts were made to locate the City Clerk, Deputy City Clerk, City Manager, and members of the City Council on said premises of the City Hall, for the purpose of filing signed duplicate originals of said [protests] . . . with any of such persons. That neither the City Clerk, Deputy City Clerk, City Manager, nor any member of the City Council of the City of Industry appeared on the said premises or in the Council Chamber between the hours of 5:00 P. M. and 8:10 P. M. on said date. That the city offices of the City of Industry, including the City Clerk's office, were open on all business days and during customary business hours between the date of adoption of Resolution No. 112 to and including the date of hearing on January 22, 1959; that the said city offices closed at the customary hour of 5:00 P. M. on said latter date. That between the hours of 7:30 P. M. and 8:00 P. M. on January 22, 1959, and at all times during such period, there was stationed at the entrance to the Council chamber and City Hall a person with signed duplicate originals of said [protests] . . . for the purpose of filing such documents with the City Clerk, City Manager, or any member of the City Council, but that no such person appeared at such location or at the City Hall premises during any of such time. That the City Council meeting of the City of Industry convened at 8:11 P. M. on said date. That, while the councilmen of the City of Industry were seated at the Council table, but prior to the time the meeting was called to order at 8:11 P. M., Royal M. Sorensen called to the attention of the Mayor of said city and of Glenn R. Watson, the city attorney of said city, that [such protests] . . . were on the table at the Mayor's place at said Council table and . . . had been placed there prior to 8:00 P. M.'' On February 19, 1959, in another meeting of the city council, a motion to the effect that ''there was not a majority protest'' was made and passed. Thereupon, an ordinance approving the annexation was introduced. On February 26, 1959, that ordinance was adopted.

There was thus presented to the superior court the question of whether timely protests had been filed which precluded the further pursuit of the annexation proceedings. That court determined that no protests against the annexation were filed

within the time provided by law;[4] the petition for a peremptory writ of mandate was denied.

In *People* v. *City of Palm Springs,* 51 Cal.2d 38 [331 P.2d 4], the Supreme Court succinctly stated the statutory law with respect to such an annexation. It said, at pages 41-42: "The annexation was conducted pursuant to the 'Annexation of Uninhabited Territory Act of 1939.' (Stats. 1939, ch. 297, p. 1567; now Gov. Code, §§ 35300-35326.) That act permits a city to annex 'contiguous uninhabited territory' (Gov. Code, § 35302) in proceedings initiated by resolution of the city's legislative body. (Gov. Code, § 35310.) The resolution must state the legislative body's reasons for desiring annexation (Gov. Code, § 35310), describe the boundaries of the territory to be annexed, designate it by an appropriate name, and contain notice of the time and place the legislative body will hear protests against the annexation. (Gov. Code, § 35306.) Copies of the resolution must be published twice in both city and county newspapers of general circulation, and written notice is to be mailed to each landowner in the territory at least twenty days before the first public hearing. (Gov. Code, § 35311.)

"Any owner of property within the territory may file written protest at any time before the hour set for hearing objections (Gov. Code, § 35312), and the legislative body must hear and pass upon all protests so made. (Gov. Code, § 35313.) If the owners of one-half of the value of the territory[5] protest, further proceedings shall not be taken. (Gov. Code, § 35313.) But if sufficient valid protests are not made, the legislative body must approve or disapprove the annexation, by ordinance. (Gov. Code, § 35314.) The annexation is complete when a certified copy of the ordinance is transmitted to the secretary of state and filed by him. (Gov. Code, §§ 35316, 35318.)"

It is thus clear that, in resolving the question presented, it is necessary to interpret the meaning of the language used in the first sentence of section 35312 of the Government Code.

---

[4]The finding was: "No written protests against the annexation of said territory to the City of Industry were filed with the City of Industry, the City Clerk, or any officer of said city before said hour set for hearing objections."

[5]In 1955, section 35313 was amended by the addition of the words, "As used in this article, 'value of the territory' means the value of the land and improvements thereon." (Stats. 1955, ch. 1948, § 5, p. 3580.) In *People* v. *City of Palm Springs, supra,* 51 Cal.2d 38, at page 45, the court said: "We therefore conclude that the 1955 amendment was merely declaratory of existing law. . . ."

That language is *"At any time before the hour set for hearing objections,* any owner of property within the territory may file written protest against the annexation." (Emphasis added.) ▮ Guidance is found in *County of Los Angeles* v. *Frisbie,* 19 Cal.2d 634, wherein it was said at page 642 [122 P.2d 526] : "Excepting when clearly otherwise intended. or indicated, words in a statute should be given their ordinary meaning and receive a sensible construction in accord with the commonly understood meaning thereof." (See also *Behling* v. *County of Los Angeles,* 139 Cal.App.2d 684, 687 [294 P.2d 534].)

▮ The words "at any time before the hour set for hearing objections" as used in section 35312 and in the resolution of the City Council of the City of Industry would ordinarily be understood by persons to whom they were addressed as meaning that protests would be timely made if presented to the city council *at any moment* before the time of the hearing with respect to the matter.[6] The city of Industry argues that such a construction is not correct because such written protests should have been filed with the city clerk in his office during his regular office hours.[7] While it is true that many statutes specify a particular officer with whom various documents are to be filed,[8] section 35312 does not designate any specific officer with whom "any owner of property within the territory may file written protest against the annexation." Such

---

[6]It is interesting to note that this is apparently the impression made upon the court in *Heller* v. *City Council of Seal Beach,* 157 Cal.App.2d 441 [321 P.2d 97], although the question was not before the court, because at page 442 it is said that the city council "set 7:30 o'clock p. m., February 29, 1956, as the deadline for the filing of protests against the proposed annexation, pursuant to section 35313, Government Code."

[7]It is stated in the recent case of *McMillen* v. *City of El Monte,* 180 Cal.App.2d 394 [4 Cal.Rptr. 750], at page 401: "In the present case, in order for the majority protests to be effective in compelling a termination of the annexation proceedings, the protests should have been in writing and filed with the city clerk before the hour set for hearing objections." However, the statement with respect to filing protests with the city clerk was dictum because in that case the only protests were oral and not written. As the court said in *Cox* v. *Tyrone Power Enterprises,* 49 Cal.App.2d 383, at page 397 [121 P.2d 829]: "Particularly is it true that incidental statements of conclusions not necessary to the decision are not to be regarded as authority."

[8]Examples from the Street and Highways Code will suffice. Thus in section 2856 is the following: "However, all written protests shall be filed with the clerk of the legislative body at or before the time fixed for the hearing. . . ." In section 5220 is found the following language: "At any time not later than the hour set for hearing objections to the proposed work, any owner of property liable to be assessed for the work may make written protest. . . . Such protest must be in writing and . . . be delivered to the clerk. . . ."

omission finds support in reason because of the nature of the proceeding. Such protests are addressed to the legislative body which is to pass upon them at the designated time pursuant to section 35313 of the Government Code which is in part as follows: ''At the time set for hearing protests, or to which the hearing may have been continued, the legislative body shall hear and pass upon all protests so made.'' If such protests may be filed up to the hour of the hearing, as we believe, obviously they may be presented at the place of the meeting of the legislative body immediately prior to the hour set for the convening thereof. Under such circumstances, there is no necessity to designate any particular agent to act for the legislative body even though written protests filed at a prior time might appropriately be filed with the clerk thereof. Consequently, cases such as *W. J. White Co.* v. *Winton,* 41 Cal.App. 693 [183 P. 277], involving the filing with a designated official of a notice of appeal in a civil action, are not pertinent because, where the filing is to be made in a matter of that nature, obviously it must be done during the established office hours of such official.[9]

We turn to the question whether, even if such written protests could be filed up to the hour of the hearing, there was a lack of timely filing in the present case because no official, whether designedly or otherwise, made his appearance until after 8 p. m., the time set for the hearing of objections to the annexation. Certainly, any citizen could and would reasonably assume that some duly authorized official or officials would be present within a reasonable time prior to the hour of the council meeting to take care of any matters preliminary thereto just as an attorney would expect a clerk to be in a courtroom for kindred purposes before the hour of the opening of court. Failure to perform such an obvious duty on the part of the city cannot operate to dissolve rights of property owners and to avoid the statutory safeguards established in annexation proceedings. As aptly stated in *Heller* v. *City Council of Seal Beach, supra,* 157 Cal.App.2d 441, at pages 449-450: ''In our opinion the Legislature carefully designed a procedure whereby the rights of private property owners and the public are protected in their right to protest annexation proceedings. Cities have been given great powers in the matter of annexations and with that power goes an equal responsi-

---

[9]If respondent's position is followed to its logical conclusion, even if the clerk had been present a few minutes before the time of the meeting in the present case he would have had no authority to accept the protests since it was after his usual office hours.

bility to see to it that the power is not abused. It is of considerable importance to many landowners whether they be in a city or out of a city, and the utmost fair play by city authorities is called for.''

 ''Laws are made for the practical governance of men and it is axiomatic that that construction of a statute which appears to be reasonable is to be preferred.'' (*Kashevaroff* v. *Webb*, 73 Cal.App.2d 177, 183 [166 P.2d 306].) As stated in *California Employment Stabilization Com.* v. *Municipal Court*, 62 Cal.App.2d 781 [145 P.2d 361], at page 785: ''The provisions of the Constitution, or of a statute, should receive a practical, rather than a technical, construction [citation]; one leading to a wise policy rather than of 'mischief or absurdity.' '' We cannot avoid the conclusion that the acts of the protestants satisfied the requirements of the law. Accordingly, since the protests were sufficient, the city council could only sustain them and terminate the annexation proceedings. (*American Distilling Co.* v. *City Council of Sausalito, supra,* 34 Cal.2d 660, 665.)

One set of findings of fact was filed and a single judgment was entered herein. Insofar as it relates to El Monte Annexation 134, the judgment is affirmed. Insofar as it relates to Industry Annexation 36, the judgment is reversed and the matter is remanded to the superior court with directions to make findings of fact and to enter judgment with respect to Industry Annexation 36 in conformity with this opinion; such judgment shall order that a peremptory writ of mandate issue commanding the respondents in the proceeding involving that annexation to terminate all proceedings relating to Industry Annexation 36 and to refrain from certifying the ordinance with respect thereto or transmitting a certified copy thereof to the Secretary of State of the State of California. Each party shall bear his or its own costs on appeal.

Vallée, Acting P. J., concurred.

BISHOP, J. pro tem.,* Concurring and Dissenting.—I concur in the judgment insofar as it relates to El Monte Annexation 134, but dissent from that part which reverses the judgment of the trial court respecting Industry Annexation 36 and imposes a death sentence upon that annexation.

By the statutory law of this state the power is given the owners of one-half of the value of property within uninhabited territory, sought to be annexed to a city, to thwart the will

---

*Assigned by Chairman of Judicial Council.

of the city that desires to effect the annexation. The power given to the few is not such that the city has to seek their permission before proceeding, but is a veto power that may be exercised, after proceedings are under way, by the filing of written protests against the annexation "at any time before the hour set for hearing objections." (Gov. Code, §§ 35312 and 35313.) In the case under review, the hour set for hearing objections was, by resolution adopted November 26, 1958, 8 p. m. of January 22, 1959. All notices of the hearing required by law were given. No written protest was filed before 8 p. m. of January 22. The trial court reached the only conclusion possible; the power of the city to proceed had not been destroyed.

I do not read the majority opinion as holding that, under the facts of this case, a written protest was indeed filed before 8 p. m. Certainly there was none "filed," before that hour within the meaning of the word as defined in *W. J. White Co.* v. *Winton* (1919), 41 Cal.App. 693, 695 [183 P. 277, 278], and *Cox* v. *Tyrone Power Enterprises* (1942), 49 Cal.App.2d 383, 395 [121 P.2d 829, 836]. Leaving a protest on a table in a room where no person was present with whom it could have been filed, was no more a "filing" than was slipping a notice of appeal under the clerk's closed door a filing, the fact considered in the case first cited.

Let us note again the words of section 35312 which extend the veto privilege: "At any time before the hour set for hearing objections, any owner of property within the territory may file written protest . . . ." These words do not say, and cannot fairly be interpreted to mean, that written protests may be filed at any moment before the hearing actually begins. In *People* v. *City of Palm Springs* (1958), 51 Cal.2d 38, 43 [331 P.2d 4, 7], our Supreme Court said (the emphasis being that of that court) : "The statutory language is clear. Section 35312 of the Government Code provides: 'At any time *before* the hour set for hearing objections, any owner of property within the territory may file *written* protest. . . .' (Emphasis added.) Plaintiff seeks to give a permissive reading to this section, relying on the word 'may.' But the section means exactly what it says—only written protests filed before the hour set for hearing need be considered. The section is permissive only to the extent that no one is required to file a protest."

There was, in fact, therefore, no road block ever erected to the city of Industry's further proceedings. Is the city to

be estopped from taking the position that no protest was filed as required because it had no official on hand to receive one for filing at 7:59 p. m. of January 22? It was stipulated "That the city offices of the City of Industry, including the City Clerk's office, were open on all business days and during customary business hours between [November 26, 1958] to and including the date of hearing on January 22, 1959; that the said city offices closed at the customary hour of 5:00 P. M. on said latter date." The petitioners had over seven weeks in which to file their protests during regular office hours. I know of no rule of law that requires a city to keep its offices open at all hours, nor one that required any official of the city of Industry to be on hand, January 22, before 8 p. m., the hour set for the hearing. If not present at 8 p. m. they could be chided for not being present at the hour set, but they were not late because not present before that hour. But written protests, to serve as a dam to further progress, had to be filed *before* 8 p. m.

It is true that no mention is made, in the code sections, of the office where any written protest may be filed. In *McMillen* v. *City of El Monte,* 180 Cal.App.2d 394, 401 [4 Cal.Rptr. 750, 755], after quoting as I have from *People* v. *City of Palm Springs,* the court went on to say: "In the present case, in order for the majority protests to be effective in compelling a termination of the annexation proceedings, the protests should have been in writing and filed with the city clerk before the hour set for hearing objections." None was so filed, and as a consequence it was held that there was no effective protest. But if the court was in error in saying that it was the city clerk with whom any written protest should have been filed—and I am not even suggesting that it was in error —it would not follow that a filing with *some* official was not required and there was none filed with any official until some time after 8 p. m., "the hour set." The city attorney correctly advised the City Council of the City of Industry that its hands had not been tied; the city council advisedly believed that it retained jurisdiction to proceed with the annexation; the trial judge was warranted in entering the judgment that he did; it should be affirmed.

A petition for a rehearing was denied February 21, 1961. Bishop, J. pro tem.,* was of the opinion that the petition should be granted. Respondents' petition for a hearing by the Supreme Court was denied March 29, 1961.

---

*Assigned by Chairman of Judicial Council.